605 F.2d 70
 Lloyd CALLAHAN, Petitioner-Appellee-Appellant,
v.
Eugene LeFEVRE, Warden of Clinton Correctional Facility,
Louis J. Lefkowitz, Attorney General of the State of New
York, Dale Thomas, Warden of the Metropolitan Correctional
Facility, Respondents-Appellants-Appellees.
 Nos. 900, 1067, Dockets 78-2159, 79-2011.
 United States Court of Appeals, Second Circuit.
 Argued May 7, 1979.
Decided Sept. 6, 1979.
 
 Margaret A. Golderer, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Sol. Gen., New York City, of counsel), for respondents-appellants-appellees.
 David J. Ritchie, Brewster, N. Y., for petitioner-appellee-appellant.
 Before SMITH, OAKES and VAN GRAAFEILAND, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 These are cross-appeals by the State of New York and petitioner Lloyd Callahan from a modified order and judgment entered in the United States District Court for the Eastern District of New York, Charles P. Sifton, Judge, which granted in part the relief sought by Callahan in his petition for a writ of habeas corpus. We conclude that Callahan may have failed to exhaust his remedies in state court as to the ground on which the District Court relied in granting partial relief, but that another claim raised and exhausted by Callahan justifies conditionally granting the writ unless retrial commences within a limited period.
 
 
 2
 Callahan seeks relief from a sentence imposed after conviction on counts of assault and attempted murder in the second degree in a trial at which the judge, apparently convinced of Callahan's guilt, instructed the jury in terms which could have left little doubt in the jurors' minds as to his view of the case and his expectation that they would have little trouble in reaching the same conclusion. The charges against Callahan arose from an incident outside a Queens tavern, during which one Andrew Cornell, with whom Callahan had been arguing, was shot in the chest and thigh. At trial in New York State Supreme Court, Queens County, the State called Cornell and two other persons who were allegedly present at the time of the incident. Each testified that Callahan had told an unidentified companion to shoot Cornell and that the companion had complied, inflicting Cornell's wounds. After the jury returned its verdict, the judge ruled that the assault conviction merged in the attempted murder conviction. He then sentenced Callahan to a maximum term of twenty-five years in prison on the latter count. Callahan appealed to the Appellate Division, which reduced the sentence to a maximum of fifteen years, but otherwise affirmed the conviction without opinion. People v. Callahan, 57 A.D.2d 631, 393 N.Y.S.2d 685 (2d Dept. 1977). A motion for leave to appeal to the New York Court of Appeals was denied. 42 N.Y.2d 1000, 398 N.Y.S.2d 1043, 368 N.E.2d 49 (1977).
 
 
 3
 Callahan filed a petition for a writ of habeas corpus in district court on February 8, 1978. The District Court, in its original memorandum and order, dated September 20, 1978, conditionally granted the writ unless retrial commenced within sixty days. On September 25, the court amended its order to provide that the writ be granted unless retrial was commenced or Callahan was resentenced on the assault count within sixty days. On October 10, upon Callahan's motion for reconsideration, the District Court vacated the previous orders, but on November 9, it issued its final memorandum and order, which reaffirmed and reinstated the previous amended order and explained the reasons for so doing. The State appealed from the District Court's judgment insofar as it granted relief, and Callahan cross-appealed insofar as the judgment denied relief from the assault conviction. We will first consider the State's appeal.
 
 
 4
 The District Court's original memorandum decision reviewed several portions of the trial judge's instructions to the jury and concluded that they "deprived petitioner of his federal due process rights and right to trial by jury by removing from the jury's consideration an element of one of the offenses . . . and effectively directing a verdict of guilty on that element of the offense of attempted murder." Although this original decision left some ambiguity as to the portion or portions of the charge that the court found to be constitutionally infirm, its final decision of November 9 focused on one element of the instructions. The court held that
 
 
 5
 by implicitly equating the statement, "Shoot him, shoot him" which statement witnesses had attributed to petitioner, with the statement, "Kill him, kill him" to which there never had been any testimony, the trial judge erroneously equated the state of mind necessary to convict petitioner for attempted murder with that required to convict him for assault.
 
 
 6
 The State argues and Callahan concedes that he did not exhaust his state remedies as to this deficiency in the charge. In fact, our examination of the record discloses that Callahan has never advanced, either in state or federal court, the argument adopted by the District Court.[1] Inasmuch as Callahan has not pursued an apparently available post-conviction remedy under N.Y.Crim.Proc.Law § 440.10(1)(h), See Cameron v. Fastoff, 543 F.2d 971, 977-78 (2d Cir. 1976), we decline to rely upon this alleged error to sustain the District Court's order.
 
 
 7
 We turn therefore to Callahan's appeal, in which he contends that numerous other grounds exist for granting him relief on both the assault and attempted murder counts.[2] Before we may consider the merits of these claims, however, Callahan must overcome the obstacles that impede his attempt to obtain habeas relief because of his state court counsel's choices of litigation "strategy."[3] Callahan's trial lawyer failed to raise a number of potentially valid objections to the court's instructions. His appellate counsel discovered a number of these claims,[4] but failed to follow through on others that had been raised at trial. And again, Callahan apparently has an available post-conviction remedy with respect to these claims. Thus, we decline to consider them.
 
 
 8
 Callahan contends, however, citing Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), that we must assess the effect of these non-exhausted claims in determining the merits of those which have been exhausted. Cupp v. Naughten does direct us to examine the entire charge, once we have found that the exhausted claims include constitutional error, to determine whether the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." 414 U.S. at 147, 94 S.Ct. at 400. But, a federal court may not, consistently with Cupp v. Naughten, look to non-exhausted claims as independent grounds for issuing the writ.
 
 
 9
 Elimination of the claims that Callahan in essence concedes that he has not exhausted leaves four points which he contends have been litigated fully in the state courts. We need not decide, however, whether all of these claims are properly before us, because one of them, standing alone, justifies the relief that Callahan seeks.
 
 
 10
 The trial judge gave the following instruction to the jury:
 
 
 11
 You have heard the testimony of the two eyewitnesses, Leckler and you heard the testimony of Janecek. They told you what they heard. They told you what they saw.
 
 
 12
 If you don't believe them, fine. This defendant is not guilty. Walk him right out of that door. But, if you believe their testimony which was given to you under oath, after they have invoked the aid of the Almighty as their Judge, and they told you what they heard and saw, then you are convinced beyond a reasonable doubt.
 
 
 13
 Callahan aims a sweeping attack at this instruction. He argues that it (1) amounted to a factual finding that Leckler and Janecek were eyewitnesses, a matter which was in dispute, (2) improperly bolstered their credibility by reference to their oath to "the Almighty," (3) when combined with the court's "meager" instructions on "reasonable doubt," allowed the jury to convict Callahan on the basis of "credence of an undefined degree" of the two witnesses' testimony, and (4) removed the element of intent and the defense of justification from the jury's consideration. The first two of these points are not properly before us, because Callahan did not raise them in his state appeal, apparently may now raise them in a post-conviction proceeding and therefore has not exhausted his state remedies.[5] As to the latter two points, however, Callahan has exhausted his state remedies.[6] Although his appellate and habeas counsel have not phrased these matters in exactly the same terms, the substance of his claim in this forum was "fairly presented" to the state court. Picard v. Connor, 404 U.S. 270, 275, 277-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1972). The "ultimate question for disposition," Id. at 277, 92 S.Ct. 509, quoting U. S. ex rel. Kemp v. Pate, 359 F.2d 749, 751 (7th Cir. 1966), in each forum has been whether the judge's instruction usurped the function of the jury and created a danger that Callahan would be convicted without proof beyond a reasonable doubt of each element of the crime, as required by In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We hold that it did.
 
 
 14
 The instruction which was given focused the jury's attention solely on the testimony of Leckler and Janecek, to the exclusion of everything else in the case. Although the question whether Callahan actually said "Shoot him, shoot him" was the principal factual issue in the case, the court was not free to make it determinative in the jury's deliberations. A defendant's right to a fair trial requires that the jury be free to weigh all the evidence presented in the case in deciding whether each and every element of the alleged crime has been proved by the prosecution. "The rule against directing verdicts of guilty includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true." United States v. Hayward, 136 U.S.App.D.C. 300, 302, 420 F.2d 142, 144 (D.C. Cir. 1969).
 
 
 15
 Moreover, this instruction failed to provide any standard for the jury's determination of whether it "believed" the two witnesses. If the jurors decided that it was somewhat more likely than not that Leckler and Janecek's testimony was true and that they therefore "believed" the witnesses, the court's instruction allowed, indeed ordered, the jury to bootstrap this belief into proof beyond a reasonable doubt.
 
 
 16
 It is of course true that one erroneous instruction often will not result in a deprivation of a defendant's constitutional rights. See Cupp v. Naughten, supra, 414 U.S. at 146-47, 94 S.Ct. 396. For this reason, the challenged instruction "must be viewed in the context of the overall charge." Id. at 147, 94 S.Ct. at 400. But here, the remainder of the charge, far from ameliorating the impact of the challenged instruction, aggravated the error. For example, the court gave one instruction which might have mitigated a portion of the error by adverting to the necessity that the jury believe beyond a reasonable doubt that Callahan told his companion to shoot Cornell. But this very instruction aggravated the other deficiency in the challenged instruction by again directing the jury that they could ignore the rest of the evidence, in this instance, that which pertained to intent.[7] Moreover, the court also told the jury that "the term reasonable doubt must never be used by a jury as an excuse for refusing to do its duty . . . ." This comment, when combined with the court's reference to Janecek and Leckler as having testified under oath and with "the aid of the Almighty as their Judge," plus the further comment that "(o)ne would have to be an idiot to sit up here and listen as you have and not have an opinion," could have left no doubt in the minds of the jurors that their purported "duty" was to return a verdict of guilty.[8]
 
 
 17
 Similarly, the judge at one point instructed the jury that "the key word is intent." This instruction would seem to have contradicted and perhaps in part mitigated the effect of the direction that the jury should convict simply if it believed Janecek and Leckler. But this apparent contradiction and the possible mitigating effect were eliminated by the remainder of the charge, which in effect directed the jury that the element of intent was present, thus reinforcing the erroneous instruction which made the "eyewitnesses' " testimony determinative of guilt.[9]
 
 
 18
 Just as one allegedly erroneous instruction cannot be viewed in isolation when we attempt to determine whether a jury charge has deprived a defendant of his constitutional rights, neither can a few, isolated, partially correct statements, scattered among numerous misstatements of the law, be held to have undone the damage caused by a crucial, constitutionally infirm instruction, which "infected the entire trial."
 
 
 19
 The impact of this erroneous instruction, unlike that relied on by the District Court, extended to both counts of which Callahan was convicted, and therefore neither conviction may stand.
 
 
 20
 Accordingly, the judgment is reversed and the case remanded with instructions to grant Callahan's petition for a writ of habeas corpus unless retrial is commenced within sixty days or such other period as may be set by the District Court.
 
 
 
 [1]
 It is possible that Callahan deliberately chose not to raise this argument because, as the District Court concluded, it would support relief only from the murder conviction, while leaving the assault conviction standing
 
 
 [2]
 In light of our decision to remand for issuance of the writ of habeas corpus on both the assault and attempted murder counts, it is unnecessary to remand this matter to the District Court for reconsideration of Callahan's other claims
 
 
 [3]
 Counsel who represents Callahan in this habeas proceeding did not represent him either at trial or on appeal in the state courts
 
 
 [4]
 Section 470.15(1) of the New York Criminal Procedure Law authorizes the Appellate Division to "consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant," even if no previous objection was made. See note 6, Infra
 
 
 [5]
 Although Callahan's trial counsel objected to the court's characterization of Janecek and Leckler as "eyewitnesses" and his reference to their having "invoked the oath of God," Callahan's state appellate counsel omitted this apparent effort to bolster the credibility of the witnesses from the judge's instruction as quoted in the brief on appeal
 
 
 [6]
 The State contends that Callahan waived these and other objections to the charge by failing to include them in the exceptions taken to the charge at trial. The State relies on § 470.05(2) of the New York Criminal Procedure Law, which provides:
 For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, but the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.
 But, as noted Supra, at note 4, § 470.15(1) of the Criminal Procedure Law has been interpreted to give the Appellate Division power, in its discretion, to consider errors that were not objected to at trial, where such errors deprived the defendant of a fair trial. People v. Robinson, 36 N.Y.2d 224, 228-29, 367 N.Y.S.2d 208, 211, 326 N.E.2d 784, 786 (1975); People v. Carroll, 37 A.D.2d 1015, 325 N.Y.S.2d 714 (3d Dept.1971); See County Court v. Allen, --- U.S. ----, ---- & n.8, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Therefore, even assuming that the exception in the trial court was insufficient to direct the court's attention to the precise grounds relied on here, such grounds were cognizable in the Appellate Division and were properly raised there by Callahan's appellate counsel.
 
 
 [7]
 The court instructed the jury:
 In other words, when one exhorts, importunes and says to another, "Shoot him. Shoot him." If he said it and you believe that he did beyond a reasonable doubt, then I tell you that the man who does the importuning and the exhorting, and the requests, and the commands, he is as responsible in the law as the man who pulls the trigger.
 
 
 [8]
 Our references to portions of the charges as to which Callahan has not exhausted his state remedies are intended only to demonstrate that when the challenged instruction is viewed in context, the effect of the error is not diminished, but magnified. We again emphasize that we reject the suggestion that a federal court may consider non-exhausted objections to a charge as additional grounds for granting a writ of habeas corpus. To adopt this suggestion would eviscerate the exhaustion requirement, which "reflects a policy of federal-state comity," Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1972), and is "designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)." Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1972)
 
 
 [9]
 The court gave the following instruction:
 The law says that every sane person is presumed to intend the natural consequences of his acts. Let me give you an illustration.
 If "A" hits "B" on the head with a hammer. "A" says, "I didn't intend to hurt him."
 Well now, let's see. If "A" hits "B" on the head with a hammer, he certainly wasn't testing out the hammer on "B's" head, because you don't test out a hammer on somebody's head. So the intention is crystal clear as it can be.
 What was the intention here? "Shoot him. Shoot him." "I shot him and he keeps coming." "Shoot him. Shoot him." What do you think the intention was? Does it leave room for something other than the illustration I just gave you? (Emphasis added.)
 Leaving aside the objection that this instruction improperly equated intent to cause injury with the intent necessary to support a conviction for murder, it would have been difficult for the prosecutor himself to have delivered a more compelling summation on the issue of intent than that given by the court.
 Moreover, the Supreme Court recently held that the "natural consequences" instruction violates the constitutional requirement that "the State prove every element of a criminal offense beyond a reasonable doubt." Sandstrom v. Montana, --- U.S. ----, ----, 99 S.Ct. 2450, 2451, 61 L.Ed.2d 39 (1979).