Charles EVANS, Petitioner,

v.

Eugene S. LeFEVRE, Superintendent,
Clinton Correctional Facility,
Respondent.

No. 79 Civ. 2083 (WCC).

United States District Court,
S. D. New York.

April 28, 1980.

Charles Evans, pro se.

Robert Abrams, Atty. Gen. of State of
N.Y., New York City, for respondent; Bar-
ry R. Fertel, Deputy Asst. Atty. Gen., New
York City, Alan J. Shaw, Summer Intern,
of counsel.

## OPINION AND ORDER

CONNER, District Judge.

This is a petition for a writ of habeas
corpus filed pursuant to 28 U.S.C. § 2254.
Petitioner Charles Evans is presently con-
fined to the Ossining Correctional Facility
pursuant to a judgment entered in the New
York Supreme Court, Bronx County, on
February 7, 1977, convicting petitioner of
burglary in the second degree and sentenc-
ing petitioner to a term of four to eight
years.

Petitioner's conviction was affirmed by
the Appellate Division, First Department,
without opinion on July 6, 1978, and peti-
tioner's application for leave to appeal to

the Court of Appeals was denied on September 26, 1978. Petitioner further moved for post-conviction relief pursuant to New York Criminal Procedure Law § 440.10 before the Bronx County Supreme Court on grounds of general "prejudicial partiality" by the trial court; this motion was also denied.

In this petition, Evans asserts that his conviction was obtained in violation of his due process right to a fair trial because of error in the trial court's jury charge in that the trial judge failed to inform the jury that the petit larceny charge in the indictment had been dismissed when he submitted the burglary and criminal trespass counts of the indictment to the jury. Evans also asserts that he was denied effective assistance of counsel due to his trial attorney's entering into evidence a hearsay document; failing to impeach the complainant, a prosecution witness, based on discrepancies between her trial testimony and her testimony before the grand jury; and failing to object to the prosecutor's summation and to the trial judge's charge. Finally, Evans alleges that he was denied a fair trial due to the prosecutor's misconduct in impeaching the testimony of the only defense witness, making "improper assertions to the jury which had no basis within the four corners of the evidence as presented at trial," and, in summation, expressing his belief in the testimony of the prosecution witnesses and his disbelief in the contrary testimony of the defense witness.

In connection with these allegations, petitioner has further moved for appointment of counsel, for a copy of the transcript of his trial, and for free copies of certain legal citations.

Respondent asserts that petitioner has failed to exhaust his state remedies with respect to these claims; has failed, in his claim of improper charge to the jury, to allege an error of constitutional dimensions; has failed to allege facts which could constitute ineffective assistance of counsel within the Second Circuit standards that such ineffectiveness must rise to the level at which the trial becomes a "farce and mockery of justice"; and has failed to allege specific acts of prosecutorial misconduct which would rise to the level of a constitutional violation.

1. Exhaustion

It appears to the Court, on review of the trial transcript, the transcript of petitioner's sentencing hearing, and petitioner's *pro se* brief to the First Department, that petitioner has not raised before the state courts, and thus has failed to exhaust, two of the claims he presents here: that his attorney's failure to impeach prosecution witness Maria Campbell, the complainant, based on asserted discrepancies between her grand jury and her trial testimony rose to the level of a denial of petitioner's Sixth and Fourteenth Amendment right to effective assistance of counsel; and that the trial judge's failure to instruct the jury that the petit larceny count of the indictment, which charged petitioner and his two co-defendants with attempted theft of phonograph records valued at $75 from Maria Campbell's apartment, had been dismissed at the close of the prosecution case denied petitioner his right to a fair trial under the due process clause of the Fourteenth Amendment. While petitioner did raise legal claims of ineffective assistance of counsel and of deprivation of his right to a fair trial before the state courts, he did not base his Sixth Amendment claim on this specific alleged defect in his attorney's performance, and did not attack the fairness of his trial by raising this particular omission by the trial judge. Thus it is difficult to say that these claims have been "fairly presented" to the state courts within the meaning of *Picard v. Connor*, 404 U.S. 270, 275, 94 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), which "requires that the *facts* on which the defendant relies have been called to the attention of the state court; " *Twitty v. Smith*, 614 F.2d 325 at 331. (2d Cir., 1979), (emphasis added); in addition to informing the state court of the legal basis of the claim, *id.* at 331. This failure to exhaust is particularly critical with respect to petitioner's allegations of judicial misconduct, since comity principles dictate that a challenge to

a state judge's conduct receive the most thoughtful consideration by a federal court and that the state courts be given the initial opportunity to review the claims. *Gayle v. LeFevre*, 613 F.2d 21 (2d Cir., 1980); *Johnson v. Metz*, 609 F.2d 1052 (2d Cir., 1979).

2. Substantive claims

Even if all petitioner's claims are treated as exhausted, however, neither the claims discussed above nor petitioner's additional claims of prosecutorial misconduct and ineffective assistance of counsel support a grant of the relief which petitioner seeks.

Factual Background

The indictment of petitioner and two co-defendants for burglary in the second degree was based on the following events. Shortly after 1:00 A.M. on May 15, 1976, two teams of police officers responded to a radio call to proceed to a certain apartment on Vyse Avenue in the Bronx. The call was prompted by a report made to the police on emergency number 911 that three male blacks were taking goods through the yard in back of that apartment. When the officers arrived at the apartment, one team covered the front door, while the others climbed up to the window in the back. The officers in front heard voices in the apartment when they arrived, and the tumblers moving in the lock. The door then opened and the officers saw petitioner Charles Evans and his two cousins, Albert Cooks and Dehwan ("Ricky") Cooks, inside; the two cousins halted in response to the officers' order, while petitioner ran to the back of the apartment; and petitioner was then apprehended by the other two officers, who had entered the rear of the apartment. The officers searched the three men and found a screwdriver on Albert Cooks and a package of three hypodermic needles on the petitioner.

The apartment as the officers found it was in a state of total disarray. In the bedroom, the mattress had been removed from the bed and overturned, all the drawers had been dumped out on the floor, all the clothing in the closets had been emptied onto the floor; in the living room, records had been smashed and lay all about, the contents of all the shelves had been swept onto the floor, lamps had been overturned; and in the kitchen, pots and pans and silverware and other items also lay all over the floor. The security gate on the window in the back of the apartment had been ripped off and swung freely on its hinges. The apartment's owner, Maria Campbell, a 76-year old widow, testified at trial that on May 10, when she had left the apartment to go to her live-in housekeeper job in New Jersey, the apartment had been neat and organized; while when she returned, at 9:30 A.M. on the 15th, everything was "just like a garbage pile," a "shambles." Trial transcript at 74. She further testified that when she checked through the apartment she found that she was missing two or three hypodermic needles, which she purchased regularly under a prescription from her doctor for Vitamin B–12 shots for her high blood pressure, Tr. at 77–78, and kept in the bedroom along with other medical supplies.

Defendant Dehwan Cooks, the only defense witness, testified that he and his brother and cousin had gone into the building on Vyse Avenue at the instigation of a girl named Annette; that while they waited for Annette to return with some beer, they noticed that the Campbell apartment was open and went in to see whether anyone was hurt because "the apartment was all messed up"; that Dehwan Cooks tripped over the police lock, locking the door behind them; that while they were in the apartment, none of the three went into the bedroom, and that Dehwan Cooks never saw petitioner pick up anything from the apartment, and did not know the source of the hypodermic needles found on petitioner; and that as the three were leaving the apartment, they were ordered to halt by the police.

*Judge's failure to instruct the jury on dismissal of larceny charge*

While the basis for petitioner's challenge to the judge's charge is not absolutely clear, it is clear that this claim arises from the judge's dismissal of the second count against petitioner and his co-defendants for attempted theft of phonograph records val-

ued at $75 from the Campbell apartment. The judge dismissed this count at the close of the prosecution's case for lack of evidence. Petitioner's claim with respect to the effect of the dismissal on the charge does not appear to be based on an allegation that the jury was confused or misled as to the continued applicability of this count; in any event, such a claim would be baseless, since the judge clearly instructed the jury that "for the purpose of simplification I have decided in my discretion to charge you only as to the first count of the indictment, that is, burglary in the second degree." Tr. at 294. Rather, petitioner's claim here appears to relate to that portion of the judge's charge in which he instructed the jury as to the elements of burglary in the second degree under New York Penal Law § 140.25,[1] specifically, on the element of "intent to commit a crime" within the place entered unlawfully. In that portion of his charge, the judge instructed the jury that "[i]n this case . . . the People contend that the intended crime was larceny or malicious mischief." Tr. at 304. The judge then defined those crimes as follows:

> "A person steals property and commits larceny when with intent * * * to deprive another of property or to appropriate the same to himself, he wrongfully takes, obtains or withholds such property from the owner thereof. Malicious mischief is defined as being a person is guilty of malicious mischief when having no right to do so or any reasonable ground to believe he has such right, he intentionally damages property of another person." Tr. at 304.

The judge did not at this point, however, inform the jury that the petit larceny count based on an attempt to steal records had been dismissed for lack of proof, and petitioner contends that this omission was error of constitutional magnitude.

■ This challenge is without merit, particularly when the omission is viewed in the context of the preceding trial and of the entire charge, see *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Callahan v. LeFevre*, 605 F.2d 70 (2d Cir., 1979). The judge's dismissal of the petit larceny count based on attempted theft of specific items, the records, is not inconsistent with submitting a burglary count to the jury based on intent to commit larceny (not necessarily of the records) or malicious mischief; this submission certainly does not rise, in itself, to the level of constitutional error. Furthermore, the judge carefully presented the specific possible intended crimes as contentions by the prosecution, properly provided a legal standard by which those contentions could be measured, see *Callahan, supra*, 605 F.2d at 73, and instructed the jury that *they* must weigh the evidence on each contention.

■ This record thus does not support a claim that the judge's instructions usurped the function of the jury or otherwise "created a danger that [the defendant] would be convicted without proof beyond a reasonable doubt of each element of the crime," *Callahan, supra*, 605 F.2d at 74, as required by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Finally, the instruction as to possible intended crimes of larceny or malicious mischief was amply supported by the trial testimony: there was clearly sufficient evidence at trial from which a reasonable jury could have inferred beyond a reasonable doubt that the defendants had formed the intent to damage property in the apartment, since the defendants were found in a locked apartment in which nearly everything portable, and some items of furniture as well, had been smashed or thrown on the floor. It further appears that there was sufficient evidence from which a reasonable jury could have inferred beyond a reasonable doubt that the defendants had formed an intent to wrongfully appropriate certain property, since, again,

---

1. That statute reads as follows:

 "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when:

\* \* \* \* \* \*

2. The building is a dwelling and the entering or remaining occurs at night."

they were found in a stranger's apartment, uninvited, at night, with the place in a shambles and the security gate ripped off the back window, and since petitioner was further discovered in possession of hypodermic needles which apparently came from that apartment. Petitioner's challenge to the judge's charge does not, on this record, state a constitutional claim.

*Ineffective assistance of counsel*

■ While the Second Circuit has recently hinted that, given the proper circumstances, it might review the "farce and mockery" standard for determining whether or not a defendant has been denied effective assistance of counsel, see, *e. g., Brinkley v. LeFevre*, 621 F.2d 45 at 47 (2d Cir., 1979); *Bellavia v. Fogg*, 613 F.2d 369 (2d Cir., 1979), that stringent test remains the law of this circuit, see *Indiviglio v. United States*, 612 F.2d 624, 632 (2d Cir., 1979). The performance of petitioner's attorney here certainly does not rise to the "farce and mockery" level; and even under the "reasonably effective assistance" standard of other circuits, petitioner's claims here would be without merit.

With respect to petitioner's first factual allegation, introduction of a hearsay document, petitioner's attorney, in the course of a vigorous cross-examination of police officer Henry, attempted to introduce the 911 call report over the hearsay objections of the prosecutor apparently to show that the caller had reported that three black males were transporting stolen goods in the yard *in back* of the Campbell apartment, rather than within the apartment or close to it, as petitioner and his co-defendants were when discovered and apprehended by the police. Although the trial transcript does not contain the legal discussion on this point, petitioner's attorney was apparently unsuccessful in having the report introduced for the truth of the caller's report, in light of a prosecution objection based on New York's two-tier business record rule; but the report was admitted into evidence, apparently for the purpose of showing that the call was made. Petitioner's attorney cannot be faulted for this attempt to create reasonable doubt in the minds of the jury.

With respect to petitioner's second specific allegation, that his attorney improperly failed to impeach the testimony of Maria Campbell based on discrepancies between her testimony on direct examination at trial and her grand jury testimony, petitioner's attorney, along with the other two defense attorneys, received copies of Ms. Campbell's grand jury testimony at the conclusion of her direct testimony. Defense counsel then were granted a short recess to review this material. Following the order of examination established at trial, in which petitioner's attorney examined after counsel for the other two defendants' counsel for defendants Dehwan and Albert Cook then cross-examined the witness, concerning among other matters, when and how she discovered that items were missing from her apartment. Under cross-examination, as on direct, the witness repeatedly became extremely upset while describing the damage done to her apartment and her distress at finding the apartment in that condition; she further testified that this was the third in a series of three robberies, and that she was not entirely clear as to what she had told which officer on what occasion about items missing from her apartment, but that she clearly remembered looking for and missing the hypodermic needles immediately after this robbery. Tr. at 82. Under these circumstances, petitioner's attorney cannot be faulted for not attempting further to impeach this elderly and appealing witness based on discrepancies between her grand jury and her trial testimony as to what items were missing from her apartment as a result of the burglary.

Finally, contrary to petitioner's assertions, petitioner's attorney did object to certain portions of the trial judge's charge before the charge was given, as well as moving to set aside the verdict at the post-trial sentencing hearing based on that portion of the charge which stated that "intent to commit a crime" could be formed even after the defendants entered the apartment, Sentencing Hearing Transcript at 4. Moreover, petitioner's counsel vigorously

pressed other claims at trial, and was found by the trial judge, contrary to petitioner's assertions made to the trial court at the sentencing hearing, to have conducted the trial ably and in a professional manner.[2] See *Bellavia, supra,* 613 F.2d at 374 (relying on trial judge's findings in rejecting claim of effective assistance of counsel). The Court cannot find, on this record, that petitioner was denied the effective assistance of counsel.

*Prosecutorial misconduct*

 Petitioner's allegations of prosecutorial misconduct rest on the prosecutor's cross-examination of the only defense witness, defendant Dehwan Cooks (which petitioner alleges was improper because the prosecutor questioned Dehwan Cooks as to why Cooks had not explained the purpose of his presence in the Campbell apartment to the arresting officers if that purpose had been innocent, as Cooks had asserted on direct examination); on the prosecutor's review of the testimony of Dehwan Cooks in his summation, which, petitioner alleges, unlawfully expressed the prosecutor's disbelief in Dehwan Cooks' testimony; and on the prosecutor's mention, in his summation, of facts not introduced as evidence at trial (petitioner does not specify which facts he refers to). After reviewing the trial transcript, however, the Court finds no constitutional violation resulting from the prosecutor's suggestion on cross-examination that Dehwan Cooks and the other defendants might have offered an explanation of their presence to the arresting officers if that presence had been innocent. Nor do any of the remarks in the prosecutor's summation go beyond the legitimate level of interpretation of testimony given or response to arguments made by defense counsel, see *Paige v. Delsheim,* No. 78 Civ. 2732 (S.D. N.Y., filed May 30, 1979) (Conner, J.) at 8. Moreover, the trial judge specifically instructed the jury that remarks by counsel for either side were not evidence and were not dispositive of the factual issues before the jury, Tr. at 285. Accordingly, petitioner has not presented a claim of prosecutorial misconduct sufficient to amount to a constitutional violation.

For the foregoing reasons, Evans' petition for a writ of habeas corpus is denied. Petitioner's further applications for appointment of counsel, for a copy of the trial transcript with which to prepare excerpts for the Court, and for free copies of certain legal citations, are also denied as unwarranted by the claims presented here or unnecessary in light of the Court's review of the entire trial and post-trial transcript and of its disposition of the case.

SO ORDERED.

---

**2.** The trial judge stated that:
  "I want the record to indicate that while Mr. Evans has somewhat deprecated the manner in which Mr. Crean defended I found Mr. Crean's conduct in the course of this trial, his ability in respect to defending this defendant in the course of the trial, professional in his manner and professional in his approach." Sentencing hearing Tr. at 37.