THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIX RAMIREZ, Appellant.

First Department, July 17, 1980

### APPEARANCES OF COUNSEL

*Judith L. Turnock* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Thomas L. Gazianis (Timothy J. McGinn* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

BLOOM, J.

On November 11, 1976, Estaban Casilla (Smokey) and defendant met in a social club where they began arguing "over a woman". The argument became heated and Smokey turned away from defendant, removed his jacket and passed it to Del Valle, one of his friends, seemingly in preparation for a fight. While he was so turned, defendant pulled out a knife and stabbed him in the chest area, mortally wounding him. Del Valle, who had turned to put down Smokey's jacket, did not see the actual stabbing. However, when he turned back he saw the knife in defendant's hand. Others also identified defendant as the man who stabbed Smokey.

Smokey was rushed to Lincoln Hospital, where he died. Two foot patrolmen heard screams and hastened to the scene of the stabbing. Defendant was arrested and, in a melee which followed involving a crowd of some 25 bystanders, suffered an injury to his arm. The police took him to a hospital, where he was treated and released. He was then taken to the 42nd Precinct.

At the station house he was questioned and made a statement to Detective Danaher. His version of the evening's events was that he had been set upon by a group of youths armed with sticks and bats, one of whom said to him "you want the same thing I gave you last time". He further

asserted that on a prior occasion he had been robbed and beaten by one of the group.

As defendant's statement approached its conclusion, he was informed that Smokey had died. He responded by saying "Good, that's what I meant to do". Subsequently the same evening, defendant repeated the statement to an Assistant District Attorney adding only that Smokey was the one who had previously robbed him.

■ ■ Defendant, who took the witness stand at the trial, told the same story embellishing it to the extent only that when he was approached by the five youths Smokey, who was among them, was carrying a crowbar. He asserted that Smokey swung the crowbar at him which he avoided by ducking. Thereupon he pulled out a knife and stabbed the deceased. The defendant, who was indicted for murder in the second degree, was found guilty of manslaughter in the first degree. We affirm.

Although defendant denigrates the character of the witnesses produced by the People, he makes no issue over whether the evidence was sufficient to establish his guilt beyond a reasonable doubt. He does, however, join issue on the failure of the trial court to charge manslaughter in the second degree as a lesser included count, and on the charge on intent.

■ There is some question as to whether the failure of the trial court to charge manslaughter in the second degree was preserved for review by us. On the day preceding the charge by the court, defense counsel requested that the crime be charged. The court, while expressing grave doubt as to the propriety of such a charge down requested that the charge be submitted in writing. The following morning the written request was submitted. Although no objection was made to the court's statement that it did not intend to charge manslaughter in the second degree, that ruling "was a refusal or failure to act as requested by the appellant" within the meaning of CPLR 5501 (subd [a], par 3), and, hence, we think, preserved the issue for review (cf. *People v Cona,* 49 NY2d 26; *People v Darrisaw,* 49 NY2d 786).

CPL 300.50 (subd 1) empowers the court to submit, in addition to the greatest offense which it is required to submit, "any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater". Subdivision 2 of that section requires the court to

submit such included count if it is so authorized to do "and is requested by either party to do so". However, "submission of a lesser degree or an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one * * * The trial court may not, however, permit the jury to choose between the crime charged and some lesser offense where the evidence essential to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well" *(People v Mussenden,* 308 NY 558, 563).

■ The essential distinction between manslaughter in the first degree and manslaughter in the second degree is that the former consists of an intentional act to inflict serious physical injury which causes death (Penal Law, § 125.20, subd 1) while the latter is bottomed upon a reckless act which causes death (Penal Law, § 125.15, subd 1). The entire thrust of the defense interposed by defendant makes it evident that his acts were intentional and not reckless, as those terms are defined in section 15.05 of the Penal Law. This was emphasized by defendant's statement when told of Smokey's death. Giving the best interpretation to defendant's testimony it is plain that the wielding of the knife was an intentional act. Hence, to have charged manslaughter in the second degree would have authorized the jury to engage in wholly arbitrary, even irrational selection from the proof *(People v Scarborough,* 49 NY2d 364).

Defendant also contends that the charge on intent transferred to defendant the burden of persuasion and was, therefore, violative of his due process rights *(Sandstrom v Montana,* 442 US 510). While it is true that the court used the words found objectionable in *Sandstrom,* Mr. Justice BRENNAN's opinion makes clear that under the Montana Code Annotated the presumption is *conclusive,* unless *"overcome by a preponderance of evidence contrary to the presumption. Unless the presumption is overcome, the trier of fact must find the assumed fact in accordance with the presumption"* (Sandstrom v Montana, supra, p 518, n 6; italics in original). Thus, as in *Mullaney v Wilbur* (421 US 684), the defendant was required to come forward with proof to negate an element of the prosecution's case. This transference of the burden of persuasion to defendant was held to be violative of defendant's constitutional rights.

Here, the charge expressly negated that transfer of the

burden of proof. Here the court instructed the jury that "[t]he existence of criminal intent constitutes a question of fact for the determination by you. The burden of showing intent, the intent with which a crime has been committed, *rests upon the Prosecution to establish by evidence beyond a reasonable doubt* * * * Intent, and I mean criminal intent, is always an essential element to the commission of a crime such as we have here. It may be proved by direct evidence or it may be proved from circumstances surrounding the transaction or act itself, or it may be proved by a combination of both." (Italics supplied.)

That the use of the "objectionable" sentence is no magic talisman leading, in the ultimate, to automatic reversal, is evidenced by the very recent decisions of our Court of Appeals in *People v Marr* and *People v Getch* (50 NY2d 456) and *People v Thomas* (50 NY2d 467). In *Getch (supra),* as in this case, the charge that a person is presumed to intend the natural and normal consequences of his acts was submitted in a manner which stressed the obligation of the prosecution to establish intent beyond a reasonable doubt. Thus there was no inversion of the burden of persuasion. The conviction was, therefore, sustained. In *Marr (supra)* the charge was submitted in mandatory form. Accordingly, the burden of persuasion was held to have been transferred from the prosecution to the defendant with the result that the conviction was reversed.

Emphasis is laid to this distinction by comparison of *Ulster County Ct. v Allen* (442 US 140), with *Sandstrom (supra). Allen (supra)* involved the statutory presumption that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all occupants of the vehicle. There the Supreme Court held that "[b]ecause this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference" *(Ulster County Ct. v Allen, supra,* p 157). Because it found (p 163) the presumption "entirely rational", it concluded that it constituted no infringement of the defendants rights and sustained its constitutional validity.

■ Here, as in *Allen (supra)* we find the presumption entirely rational. Because the trial court carefully charged the jury that the question of criminal intent was one to be decided

by them and that the prosecution had the burden of proving it beyond a reasonable doubt we are impelled to conclude that no right of the defendant was violated.

The final issue raised is that of sentence. We find it to be without merit.

Accordingly, the judgment of the Supreme Court, Bronx County (WARNER, J.), rendered May 4, 1978, convicting defendant of the crime of manslaughter in the first degree, and sentencing him to a term of imprisonment, should be affirmed.

CARRO, J. (dissenting). I would reverse on the authority of *Sandstrom v Montana* (442 US 510).

The trial court's entire charge on the definition of intent, in this case where the crucial issue was not whether defendant-appellant had stabbed deceased, which was admitted, but whether his intent was to cause death, to cause serious physical injury, or to defend himself from attack from the deceased and others, allegedly armed with clubs and sticks, is as follows:

"Let me now define this word intent for you.

"*A person is presumed to intend the natural and probable consequences of his acts.* Criminal intent is an intent to do knowingly and willfully that which is condemned as wrong by law. A criminal intent may be inferred from all the circumstances of the case. It need not be established by direct proof to constitute the crime. There must not only be the act, but also the criminal intent and these must occur. The latter being equally essential with the former. The existence of criminal intent constitutes a question of fact for the determination by you. The burden of showing intent, the intent with which a crime has been committed, rests upon the Prosecution to establish by evidence beyond a reasonable doubt. So where the law requires that the People must establish a specific or certain intent on the part of the one charged with the commission of the crime, the law does not expect or require for obvious reasons that intent must be proved by direct proof to an absolute certainty or with mathematical precision. Intent, and I mean criminal intent, is always an essential element to the commission of a crime such as we have here. It may be proved by direct evidence or it may be proved from circumstances surrounding the transaction or act itself, or it may be proved by a combination of both.

"Well, what is intent? Intent is the frame of mind of the perpetrator of the act at the time it is committed. You must probe the mind. You may say to yourselves, well, how are we to determine what a person's intentions are? Well, ladies and gentlemen, we can only determine that by one's acts, by one's conduct, by what was done and what was said, if anything. You should consider what was allegedly done; what means were allegedly employed; the type of instrument allegedly used, if any; the part of the body allegedly attacked; and all these circumstances, and from these surrounding circumstances, you then are to determine the intention of the perpetrator at the time.

"*Under our law, every person is presumed to intend the natural and inevitable consequences of his own acts.* The jury has the right to infer from the results produced, the intention to effect such result. The intent formed is a secret and silent operation of the mind, and it's physical manifestation. *The accomplishment of the thing determined upon, one's mind is compelled from necessity to refer to the acts and physical manifestations of the intent exhibited by the results produced is the safest, if not the only proof of the fact to be ascertained.* A person acts intentionally with respect to a result or to conduct described by Statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." (Emphasis added.)

In *Sandstrom (supra,* p 512) the Supreme Court was presented, in a case in which intent was an element of the crime charged, with the instruction "the law presumes that a person intends the ordinary consequences of his voluntary acts". It held that the instruction violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt, as it had the effect of relieving the State of the burden of proof on the critical question of Sandstrom's state of mind. Given the lack of qualifying instructions as to the legal effect of this presumption, the court (p 524) could not discount the possibility that the jury may have interpreted the instruction as a "conclusive" presumption or as a "burden—shifting" presumption on the element of intent. Citing *Morissette v United States* (342 US 246), the court stated that where the intent of the accused is an ingredient of the crime charged, its existence is a jury issue, and "[i]t follows that the trial court may not withdraw or prejudge the issue by instruction that the law

raises a presumption of intent from an act." *(Sandstrom v Montana, supra,* p 522.)

The *Sandstrom* jurors were told not that they had a choice or that they might infer the conclusion that "the law presumes that a person intends the ordinary consequences of his voluntary acts," but were told only that the law presumed it. The Supreme Court therefore did not rule upon the effect of such qualifying instructions, other than, perhaps, "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instructions." *(Sandstrom v Montana, supra,* p 514.)

Our Court of Appeals in *People v Getch* and *People v Marr* (50 NY2d 456) has indicated that the charge will be read as a whole, and if qualifying instructions were given and made clear that the burden of proof was not shifted to the defendant, that the so-called "presumption" was permissive, and it was for the jury to decide whether the conclusion should be drawn after considering all of the circumstances, then the instruction will not have been error.

However, reading this instruction on intent as a whole, it is clear to me that the words *"the intent exhibited by the results produced is the safest, if not the only proof of the fact to be ascertained"* (emphasis added) overbear the qualifying portions and make it more likely that a reasonable juror may have interpreted the instruction as a conclusive or a burden-shifting presumption. This matter should therefore be reversed and remanded for a new trial.

Appellant failed to object at trial to the portion of the charge at issue. As I believe this instruction to be a violation of due process which deprived appellant of a fair trial, we should consider it as a matter of discretion in the interest of justice (CPL 470.15, subd 6, par [a]; see, also, *People v Thomas,* 50 NY2d 467).

KUPFERMAN, J. P., and LUPIANO, J., concur with BLOOM, J.; FEIN and CARRO, JJ., dissent in an opinion by CARRO, J.

Judgment, Supreme Court, Bronx County, rendered on May 4, 1978, affirmed.