Felix RAMIREZ, Petitioner,

v.

E. W. JONES, Superintendent, Great Meadow Correctional Facility, Comstock, New York, Respondent.

No. 80 CIV. 0797 (CBM).

United States District Court,
S. D. New York.

Nov. 16, 1981.

The Legal Aid Society by Judith L. Turnock, William E. Hellerstein, New York City, for petitioner.

Robert Abrams, Atty. Gen., State of New York by Susan L. Yarbrough, Asst. Atty. Gen., New York City, for respondent.

## OPINION

MOTLEY, District Judge.

Petitioner, Felix Ramirez, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Great Meadow Correctional Facility at Comstock, New York. He was convicted upon a jury verdict of manslaughter in the first degree in the New York Supreme Court, Bronx County on May 4, 1978. Judge Warner sentenced him to an indeterminate 5–15 year period of imprisonment.

Petitioner appealed his conviction to the Appellate Division arguing, *inter alia*, that the court's charge to the jury on intent eliminated the People's duty to prove intent, or shifted the burden of proof on that element, thereby denying him due process of law and a fair trial. On July 17, 1980, the New York Appellate Division, First Department, affirmed petitioner's conviction in a 3–2 decision, with majority and dissenting opinions that reached the issue on its merits. *People v. Ramirez*, 76 App.Div.2d 115, 430 N.Y.S.2d 83 (1st Dept. 1980). On August 21, 1980, petitioner's application for leave to appeal to the New York State Court of Appeals was denied.

The State Courts have thus had a "fair opportunity" to consider the alleged constitutional defect and petitioner, consequently, has satisfied the procedural prerequisite for all habeas corpus proceedings. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121 (2d Cir.), *cert. denied* 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972). This court will therefore reach the merits of his claim.

*Facts*

Only a brief recitation of the facts is necessary to highlight the legal question at issue in this case. On November 11, 1976, petitioner and Estaban Casilla ("Smokey") had an argument over a woman at a social club in the Bronx. The argument became heated and, apparently in preparation for a fight, Smokey removed his jacket and handed it to his friend, Del Valle. When Smokey's back was turned, petitioner pulled out a knife and stabbed Smokey in the chest, mortally wounding him. Del Valle, having turned to put down Smokey's jacket, did not actually see the stabbing, but did see the knife in petitioner's hand upon turning back. (Tr. 128–30).

Petitioner took the stand and testified at trial that at the time of the incident, he had been approached by five youths, including Smokey, who was carrying a police lock bar.[1] Petitioner testified that Smokey swung at him with the police lock bar, petitioner ducked to avoid the blow and, intending only to defend himself, stabbed Smokey. (Tr. 300–08).

The crucial issue before the jury was thus not whether petitioner had stabbed Smokey, which was admitted, but rather what his *intent* was, i.e. to cause death (second degree murder),[2] to cause serious physical injury (first degree manslaughter),[3] or to defend himself from attack from Smokey (justification).[4]

---

1. A police lock bar is part of a special apartment door lock. It is a cylindrical metal rod, about four feet long, which slips through a hinge on the inside of the door, its other end secured in a hole in the floor. (Tr. p. 171).

2. "A person is guilty of murder in the second degree when:
   1. With intent to cause the death of another person, he causes the death of such person . . ."
   New York Penal Law § 125.25(1).

3. "A person is guilty of manslaughter in the first degree when:

1. With intent to cause serious physical injury to another person, he causes the death of such person . . ."
New York Penal Law § 125.20(1).

4. Under New York Penal Law § 35.05, conduct which would otherwise constitute an offense is justifiable and not criminal when:
   "2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary stan-

The trial court's entire charge on the definition of intent was as follows:[5]

"Let me now define this word intent for you.

*A person is presumed to intend the natural and probable consequences of his acts.* Criminal intent is an intent to do knowingly and willfully that which is condemned as wrong by law. A criminal intent may be inferred from all the circumstances of the case. It need not be established by direct proof to constitute the crime. There must not only be the act, but also the criminal intent and these must occur. The latter being equally essential with the former. The existence of criminal intent constitutes a question of fact for the determination by you. The burden of showing intent, the intent with which a crime has been committed rests upon the Prosecution to establish by evidence beyond a reasonable doubt. So where the law requires that the People must establish a specific or certain intent on the part of the one charged with the commission of the crime, the law does not expect or require for obvious reasons that intent must be proved by direct proof of an absolute certainty or with mathematical precision. Intent, and I mean criminal intent, is always an essential element to the commission of a crime such as we have here. It may be proved by direct evidence or it may be proved from circumstances surrounding the transaction or act itself, or it may be proved by a combination of both.

Well, what is intent? Intent is the frame of mind of the perpetrator of the act at the time it is committed. You must probe the mind. You may say to yourselves, well, how are we to determine what a person's intentions are? Well, ladies and gentlemen, we can only determine that by one's acts, by one's conduct, by what was done and what was said, if anything. You should consider what was allegedly done; what means were allegedly employed; the type of instrument allegedly used, if any; the part of the body allegedly attacked; and all these circumstances, and from these surrounding circumstances, you then are to determine the intention of the perpetrator at the time.

*Under our law, every person is presumed to intend the natural and inevitable consequences of his own acts.* The jury has the right to infer from the results produced, the intention to effect such result. The intent formed is a secret and silent operation of the mind, and its physical manifestation. *The accomplishment of the thing determined upon one's mind is compelled from necessity to refer to the acts and physical manifestation of the intent exhibited by the results produced is the safest, if not the only proof of the fact to be ascertained.* A person acts intentionally with respect to a result or to conduct described by Statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

(Tr. 520–523) (emphasis added)

■ Petitioner now claims, as he did before the State Appellate courts,[6] that this

---

dards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."
New York Penal Law §§ 35.10(6) and 35.15(2) further provide that a person may be justified in using physical force, even deadly force, under certain circumstances in order to defend himself. Thus, in New York, justification is a complete defense.

**5.** This definition of intent occurred during the portion of the charge dealing with murder in the second degree, an offense of which petitioner was acquitted. In the charge on manslaugh-

ter in the first degree, the offense of which petitioner was convicted, the court did not, however, give any definition of intent, an essential element of that crime. Thus, it can be assumed that the charge on intent was meant to apply to the manslaughter charge as well, and that the jury so understood it.

**6.** Although trial counsel did not except to this instruction at trial, the Appellate Division did not reject the issue because of a failure to meet New York's contemporaneous objection requirement. Instead, the Appellate Division addressed the merits of Petitioner's constitutional claim. It is well established in this Circuit that

charge to the jury deprived him of due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

*Discussion*

Petitioner argues that the trial court's instructions to the jury on the issue of intent violated his right to a fair trial by shifting the burden of proof on this issue to him, or by eliminating the People's duty to prove intent.

■■ There is no question that the due process clause protects the criminal defendant against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The prosecution must prove each and every element of a crime beyond a reasonable doubt and may not shift this burden to the defendant. *Id.* at 364, 90 S.Ct. at 1072. Indeed, in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (*Sandstrom*), the Supreme Court held that instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," where the intent of the accused is an ingredient of the crime charged, is violative of the Fourteenth Amendment's requirement that the state prove every element of a criminal offense beyond a reasonable doubt, as it has the effect of relieving the People from proving the critical element of a defendant's state of mind.

Here, in the charge of the jury on the issue of intent, the trial court began the charge by stating that "[a] person is presumed to intend the natural and probable consequences of his acts" and concluded the charge with the admonition that "[u]nder our law, every person is presumed to intend the natural and inevitable consequences of his own acts." (Tr. 521–22). The state concedes that these two sentences bear a similarity to the language condemned as burden-shifting in *Sandstrom, supra*, but

argues that these errors were more than "... offset and cured by the court's repeated emphasis on the fact-finding function of the jury and the burden of proof to be borne throughout by the prosecution." (Respondent's Brief, p. 8). The state additionally relies on the fact that the trial court "... alluded to and explained the nature and importance of the reasonable doubt standard—and the role and responsibility of the jury in assessing such doubt— no less than 40 times." *Id.*

■ It is true that a jury instruction must be viewed in the context of the overall charge. *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Callahan v. LeFevre*, 605 F.2d 70 (2d Cir. 1979). This does not mean, however, that an instruction by itself may never rise to the level of constitutional error. *Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400. Instead, what it indicates is that the proper inquiry is whether the remainder of the charge ameliorated or aggravated the impact of the challenged instruction, *Callahan, supra*, 605 F.2d at 74–75, and whether the constitutionally infirm instruction "infected the entire trial." *Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400.

The state's argument appears to be that this issue can be resolved by lining up the number of times the jury is instructed correctly against the number of times it is instructed erroneously. There is no support for this argument. It is patently clear that in *Sandstrom* the Court was concerned with the *impact* of the erroneous instruction upon the jury, and whether a reasonable juror could have interpreted the instruction as shifting or eliminating the People's burden of proof. *Id.* 442 U.S. at 514, 99 S.Ct. at 2454. Here, while the unconstitutional portions of the charge were qualified during the charge by reference to the fact-finding function of the jury, the trial court also told the jury that "the intent exhibited

where the Appellate Division has determined to consider the merits of an issue notwithstanding a defendant's failure to lodge a contemporaneous objection at trial, habeas corpus review is

not precluded. *See, e.g., Washington v. Harris*, 650 F.2d 447, 451 (2d Cir. 1981) (there is "no warrant ... for guarding state procedural rules more vigilantly than the state itself does").

by the results produced is the safest, *if not the only* proof of the fact to be ascertained." (emphasis added). This sentence, together with those identical to the instructions condemned in *Sandstrom*, overbears the qualifying portions and makes it extremely likely that a reasonable juror could have interpreted the instruction on intent, taken as a whole, as a conclusive presumption.

■ A conclusive (or mandatory) presumption is one where the jury is required to find an ultimate fact to be true upon proof of another fact unless they are persuaded by a preponderance of evidence offered in rebuttal. The conclusive presumption "may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden." *County Court of Ulster County v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979).

■ A permissive inference allows, but does not require, the jury to infer the ultimate fact from proof of the basic one. The permissive inference

> leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof; it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could have made the connection permitted by the inference.

*Id.*

■ The ultimate test of the constitutional validity of both of these devices remains constant: the device must not undermine the factfinder's responsibility at trial, based on the evidence adduced by the State, to find the facts beyond a reasonable doubt. *Id.* at 156, 99 S.Ct. at 2224.

■ Here, the jury received both a permissive instruction and conclusive presumptions. This court is not persuaded, however, that the additional permissive instruction was sufficient to dissipate the unconstitutional effect of the conclusive presumptions. As stated in *Sandstrom*:

> [E]ven if a jury could have ignored the [conclusive] presumption ... we cannot be certain this is what they *did* do. As the jury's verdict was a general one ... we have no way of knowing that [the defendant] was not convicted on the basis of the unconstitutional instruction. And "it has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." [citations omitted]

*Id.* 442 U.S. at 526, 99 S.Ct. at 2460. (emphasis in the original).

The *Sandstrom* Court also considered and rejected the argument, raised by the state here, that a proper instruction on the burden of proof and the presumption of innocence could offset the effect of the erroneous burden-shifting presumption.

> It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly.... But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proved beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt.

442 U.S. at 518 n.7, 99 S.Ct. at 2456 n.7.

Both the New York Court of Appeals and The Second Circuit have had occasion to consider the question at issue here. In *People v. Getch*, 50 N.Y.2d 456, 429 N.Y.S.2d 579, 407 N.E.2d 425 (1980), the Court of Appeals upheld the trial court's instruction that "*you may infer* that a person intends that which is the natural and necessary and probable consequences of the act done by

him ... *[Y]ou have a right to find* from the results produced an intention to effect it," 429 N.Y.S.2d at 582, 407 N.E.2d at 428, (emphasis added), because the specific burden-shifting instruction condemned in *Sandstrom* was not in the trial court's charge. In *People v. Marr*, a companion case decided on the same day, the challenged instruction, like the one here and in *Sandstrom*, was "*The law says* that a person is presumed to intend that which he actually does" and, later, "A person intends [the] natural and reasonable and probable consequences of his acts." *Id.* at 581, 407 N.E.2d at 427.* Unlike in *Getch*, the Court of Appeals concluded that there should be a reversal because "the court's instructions on intent followed, almost verbatim, the terms of the *Sandstrom* charge." *Id.* at 583, 407 N.E.2d at 429. This result was reached notwithstanding the fact that the trial court had informed the jury that the State had the burden of proving every element, including intent, beyond a reasonable doubt. *Id.*

In *United States v. Robinson*, 545 F.2d 301 (2d Cir. 1976), the district court, after charging the jury that the government had the burden of proving "intent to defraud," charged:

> In determining the issue of intent in this case a jury may reasonably infer, as I said before, that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.
>
> So, unless the contrary appears from the evidence, the jury may draw the inference that the defendant intended the consequences which one in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the defendant.

*Id.* at 305.

The Second Circuit reversed, in spite of the fact that the jury had been correctly instructed on the government's burden of proving intent and guilt beyond a reasonable doubt. "We cannot conclude that the jury ignored the specific, erroneous instruction. On the contrary, the jury probably applied the erroneous instruction and believed the government had satisfied its burden by proving mere negotiation of the checks." *Id.* at 306. *See also Washington v. Harris*, 650 F.2d 447, 453 (2d Cir. 1981) (finding "natural and probable consequences" charge at issue here impermissible, and remanding on other grounds).

What thus becomes clear is that by twice instructing the jurors that a person is presumed to intend the natural and probable consequences of his act, supplemented by directions that "the result[ ] produced is the safest, if not the only proof" of intent, the trial court ran afoul of the constitutional guarantees specifically enunciated in *Sandstrom* and later affirmed by the New York Court of Appeals and Second Circuit. The court's charge here precluded the jury's proper consideration of the major trial issue—what petitioner intended—and concomitantly relieved the State from the burden of proving intent beyond a reasonable doubt. Reasonable jurors could have concluded that petitioner was either required to persuade them that he lacked intent, or that they were compelled to find intent because petitioner admitted, in the context of his claim of self-defense, that he stabbed Smokey. Consequently, petitioner was deprived of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

Accordingly, the instant petition for writ of habeas corpus is granted and it is ordered that petitioner be released unless retried within sixty (60) days of the date of this court's order.

* (emphasis added)