**William J. NELSON, Petitioner-Appellee,**

v.

**Charles SCULLY, Warden, Respondent-Appellant.**

No. 254, Docket 81–2208.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1981.

Decided Jan. 28, 1982.

Certiorari Denied June 1, 1982.
See 102 S.Ct. 2301.

---

Mark Dwyer, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York County, Robert A. Nicholas, Asst. Dist. Atty., New York City, of counsel), for respondent-appellant.

David S. Versfelt, New York City, for petitioner-appellee.

Before FRIENDLY, KAUFMAN and OAKES, Circuit Judges.

FRIENDLY, Circuit Judge:

The State of New York appeals from a judgment of the United States District Court for the Southern District of New York, Thomas A. Griesa, *Judge*, granting a petition for a writ of habeas corpus by William John Nelson. Nelson was convicted of murder in the second degree, N.Y. Penal Law § 125.25, in the New York State Supreme Court on November 3, 1976, before Justice Burton Roberts and a jury. He was sentenced to an indeterminate prison term of fifteen years to life.[1] For reasons not appearing in the record, Nelson's appeal to the Appellate Division, First Department, was not decided until October 16, 1979, when that court affirmed without opinion, 72 A.D.2d 671, 421 N.Y.S.2d 956. On April 4, 1980, Judge Jones of the New York Court of Appeals denied leave to appeal. 49 N.Y.2d 1005, 429 N.Y.S.2d 1035, 406 N.E.2d 1089.

One of Nelson's claims in the Appellate Division was that an instruction given by the trial judge containing language concerning a person being presumed to intend the natural and probable consequences of his acts operated to deprive Nelson of his constitutional rights in violation of the Su-

---

1. This was Nelson's second conviction for homicide. In 1968 he had been convicted of manslaughter and received a sentence of zero to eight years (Trial Transcript 74).

preme Court's decision, which had come down after the trial, in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). On this basis and others, Nelson filed a petition for habeas corpus in the District Court for the Southern District of New York. Dismissing all the other grounds asserted by Nelson, Judge Griesa, although noting that the state trial judge had included in his charge "a lengthy discussion of intent", granted the writ because the charge had included the following:

> Also, there is a principal [sic] of law upon which you may wish to rely in determining a person's intent, and that is, a person is presumed to intend the natural and probable consequences of his acts. A person cannot, for example, throw someone off the roof of an apartment building and then say he was merely conducting an experiment in aerial dynamics.

Without undertaking an analysis of the rest of the charge, as required by *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973), the judge concluded:

> Thus the jury was permitted to substitute a presumption of the kind described for its own finding, based on proof beyond a reasonable doubt, that the necessary intent existed for a second degree murder conviction—*i.e.*, a specific intent to cause the death of another person.

Subsequently the judge denied a motion by the District Attorney for New York County for reconsideration on the basis that procedural grounds prohibited Nelson's being heard in federal habeas with respect to the instruction which had been held to violate his constitutional rights. The State has appealed. We reverse.

The facts leading to Nelson's conviction were as follows:

On the night of July 31, 1975, a group of some 20 people gathered as was customary on the sidewalk near the front of the Pennington Hotel at 316 West 95th Street in Manhattan and passed the time talking, drinking [2] and listening to music. Dennis Bryant, a resident of the hotel, and a friend named "Teddy" fell into a shoving match over possession of a chair in which Bryant had been sitting. That dispute soon ended and Bryant, Teddy and several others made a trip to a nearby liquor store and brought some wine back. Nelson, also a resident of the hotel, joined the crowd only after this. He spoke to Bryant about the latter's quarrel with Teddy, but Bryant told him that the fight was over and should be forgotten. However, Nelson got into an argument about the fight with "Frenchy", a hotel employee, which became loud. Around 11:30 P.M. Alma Cartar and Douglas arrived next door to the hotel and sat down to drink some beer. Douglas, who was acquainted with Nelson, stepped between Nelson and Frenchy, and asked them to "be cool" and not to argue "right in front of the building."

Nelson's response was to tell Douglas "it's none of your fucking business". While trying to keep Nelson and Frenchy apart, Douglas touched Nelson, who responded "I'm tired you fuckin' niggers fuckin' with me" [3] and "If you don't get your ass off me I am going to bust a cap in your ass." Douglas answered, "Well, man, if you're going to do that, you go ahead and do that."

Nelson responded by drawing a revolver from his waist. Douglas was close enough to knock aside Nelson's arm so that Nelson's first shot struck the ground. In an effort to protect himself, Douglas took a step backward, whereupon Nelson leveled his revolver at Douglas' chest, and fired twice more. Douglas fell to the ground, unconscious and gasping for breath with two bullet wounds in his chest. He died shortly thereafter.

The trial judge submitted the case to the jury on both a second degree murder charge, which requires an intent to kill, and a first degree manslaughter charge, for

---

**2.** What and in what quantity the record does not disclose. In any event this drinking is immaterial since Nelson was not part of the crowd.

**3.** Both Nelson and Douglas were black.

which the requisite intent is to cause serious physical injury, N.Y.Penal Laws §§ 125.25 and 125.20. His charge spreads over 62 typewritten pages. He fully explained that the People had the burden of proving Nelson's guilt beyond a reasonable doubt. "It never shifts at any time to the defendant at all in any aspect" of the case. "The defendant is never required, no defendant is ever required to disprove anything or to prove anything," since he "comes into this courtroom shielded by one of the oldest presumptions which we know in our law, the presumption of innocence . . . ." This presumption "follows the defendant to the jury room. It is with the defendant until the jury is satisfied beyond a reasonable doubt to the contrary, until the jury excludes every other reasonable hypothesis but that of guilt, and until actually a jury renders a verdict of guilty into court." It would be hard to think of an instruction which expounded more fully the presumption of innocence and the right of a criminal defendant to have the state compelled to establish every element of the crime beyond a reasonable doubt.

Some pages later the judge turned to the charge of murder in the second degree. After reading the relevant portion of the indictment, he explained the two elements of the crime, causing the death of a person and having the intent to do so. Taking up the second element he explained that "before a person can be convicted of the crime of murder in the second degree you must be convinced beyond a reasonable doubt that he specifically intended to cause the death of Robert Lee Douglas, as opposed to the intent merely to injure him." He added that "Under the definition contained in the Penal Law, a person acts intentionally with respect to a result when his conscious objective is to cause that result and when his act or acts result from that conscious intent." After dwelling on the difficulty in determining intent, which is "the secret, silent operation of someone's mind," he said that this "can usually be proven only by the facts and circumstances leading up to and surrounding the acts constituting the crime. You have the right, therefore, to determine a person's intent *inferentially* from what he did; from what he allegedly said, and from all the evidence and testimony you have concerning the facts and circumstances constituting this case." (Emphasis added). The judge explained that these facts and circumstances included motive, threats made by the defendant to the victim, the number of shots fired, the location of the wounds on the victim's body, the distance from which the gun was fired, the testimony of the alleged witnesses to the shooting, and the physical condition of the defendant. Then followed the passage which we have quoted above.

The judge then went on to the subject of intoxication,[4] and said that this as such was

---

4. Despite repeated pressure from Nelson's counsel, the witnesses to the shooting resisted the suggestion that Nelson was intoxicated at the time he killed Douglas. Witness Godfrey Spell stated, "I don't know if he was drinking or not," Trial Transcript at 579, and "No, I didn't see him drinking," *id.* at 580. Later, in response to a question from the court, Spell testified, "No, I wouldn't say he was high," *id.* at 586, and gave a similar response regarding the possibility that the defendant was intoxicated, *id.* at 585.

Witness Dennis Bryant was asked, "Did [Nelson] appear to be intoxicated, perhaps?", and replied, "I wouldn't know about all that. But he just was excited, excited enough to shoot the guy." *Id.* at 417. Nelson's counsel returned to the point shortly thereafter, and again Bryant responded, "I really don't know man. I heard [Nelson threaten Douglas]. I don't know if he was high or not." *Id.* at 420.

The only evidence which might support the inference that the defendant was "high" is at page 422 of the Trial Transcript, where, after his making the statements just quoted, Bryant's attention was called to notes of an interview between him and a Detective Henry shortly after the shooting. This colloquy ended as follows:

THE COURT: Does that refresh your recollection that you said that [the defendant was high] to anybody?
THE WITNESS: No.
THE COURT: Does it refresh your recollection that you felt the defendant was high?
THE WITNESS: It's possible.
THE COURT: It's possible?
THE WITNESS: I felt he was high.
Q. You did feel he was high?
A. I felt that way, but I never stated he was high.

not a defense to a criminal charge, but "you may consider what evidence if any that would show that this defendant was so under the influence of an intoxicant that he was unable to form a specific mental intent to kill Robert Lee Douglas. In this respect, you should consider the testimony concerning the defendant's alleged acts, his conduct, and his words before, during and after he allegedly shot Robert Lee Douglas." The judge also stated, "you the jury may, if you find from the testimony that [a] motive existed, consider it along with all the other factors in determining whether or not the defendant intended to kill Mr. Douglas beyond a reasonable doubt." He instructed that the jury was not to consider Nelson's flight "in determining his intent when and if he shot the victim, Robert Lee Douglas." He told the jury that they need not find that the intent to kill existed for any specific period before the firing of the gun, that if "the intent existed for a fraction of a second before the shots were fired, it would suffice. But you must be convinced beyond a reasonable doubt that the intent to kill existed before you can convict a person of the crime of murder. If after considering all of the evidence you find that the People have established the defendant's intent to cause the death of Robert Lee Douglas beyond a reasonable doubt, you must go on to consider the second element of the crime of murder in the second degree. If you find that the People have not sustained their burden with respect to the element of intent, then you must find the defendant not guilty of the crime of murder in the second degree."

The State's contention that Nelson is not procedurally entitled to invoke federal habeas because of the quoted instructions is a substantial one. Before the court's charge to the jury Nelson submitted thirty-one requests to charge, including several relating to the issue of intent. His request No. 20 was:

> THE COURT: You didn't know whether he was high, you just felt that?
> THE WITNESS: Yes, because of the way he acted.
> THE COURT: The way he acted, hollering and shooting the gun?

Every sane person is presumed to intend the natural and probable consequences of his acts. However, a specific intent to kill is required as an element of the crime of Murder in the Second Degree, and no inference of such intent may be drawn from the mere proof of the act of shooting the deceased.

The judge denied these requests except to the extent they would be "charged in the Court's own language." After delivery of the charge, defendant's counsel took no objection to the first of the sentences quoted above, namely, that "there is a principal [sic] of law upon which you may wish to rely in determining a person's intent, and that is, a person is presumed to intend the natural and probable consequences of his acts", but objected unsuccessfully to the illustration that followed. When Nelson raised the later decided *Sandstrom* case in his brief in the Appellate Division, the State, in addition to answering on the merits, made the point that he could not be heard to rely on *Sandstrom* since he not only had not excepted to the presumption charged as Sandstrom had done, but requested it. The case thus falls, the State argues, within *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976), and *Gruttola v. Hammock*, 639 F.2d 922 (2 Cir. 1981), holding that federal habeas generally will not lie when the petitioner has failed to make a timely objection required by state law.

Nelson responds that his trial counsel's objection, although applying literally only to the second sentence, should have been understood as going also to the first; that, apart from this, the denial of his requested charge was sufficient under N.Y.Crim. Proc.Law § 470.05(2); and that in any event it was enough that he raised the point before the Appellate Division, citing in this connection *Washington v. Harris*, 650 F.2d

> THE WITNESS: Yes.
> Trial Transcript at 422.
> Nelson did not testify.

447, 451–52 (2 Cir. 1981), and *Callahan v. LeFevre*, 605 F.2d 70, 73–74, n.6 (2 Cir. 1979). It can be argued, in answer to the first point, that there was no reason for the judge to consider an objection to the second sentence as constituting also an objection to the first—indeed that the objection indicated acquiescence in the first sentence; that the request to charge cannot be deemed a sufficient objection since the last sentence of the request was wrong under the facts of this case; and that there is no reason to believe that the Appellate Division in fact considered the *Sandstrom* point—thus making *Gruttola* rather than *Washington* or *Callahan* the pertinent decision of this court. However, under our view with respect to the merits we find it unnecessary to pass upon the State's procedural objection and leave this undetermined.

The trial judge in *Sandstrom* had charged baldly:

The law presumes that a person intends the ordinary consequences of his voluntary acts.

The effect of this upon "a reasonable juror", 442 U.S. at 515, 99 S.Ct. at 2454, would be quite different from Justice Roberts' telling the jury of a principle of law "upon which you may wish to rely." To be sure, a trained lawyer possessing the analytical skill of our dissenting brother could parse the instruction as saying that the jury was free to rely or not to rely on the principle of law mentioned by the judge but that if it made the former choice, it would then be compelled to find that Nelson had the necessary intent unless he produced evidence to overcome the presumption. But this is attributing altogether too much legal acumen to the ordinary juror—who had not imbibed Wigmore's Evidence with his mother's milk. Evidently it made no such impression on Nelson's counsel who had himself proposed the presumption language and objected only to the example. This was so extreme that its effect could only have been to lead the jury to choose not to rely on the principle of law in this case. And the judge immediately dispelled any improper effect of the presumption charge by peremptorily directing the jury:

You ask yourself this question: Did William John Nelson have the specific intent to kill Robert Lee Douglas.

Even if we were to look solely at the portion of the charge challenged by Nelson, the only conclusion a reasonable juror could draw was that he must determine from all the evidence, with leave to use the common sense notion that people do indeed intend the natural and probable consequences of their acts, whether or not, in firing two bullets at Douglas' chest at point blank range, Nelson had the specific intent to kill. In other words, even if we were to look only at this one passage in the charge, we might well conclude that the case is attracted by *Ulster County Court v. Allen*, 442 U.S. 140, 157–63, 99 S.Ct. 2213, 2224–28, 60 L.Ed.2d 777 (1979), decided a fortnight before *Sandstrom* and accepted by it, 442 U.S. at 514, 99 S.Ct. at 2454, rather than by *Sandstrom* itself.

However, we need not and do not go so far. *Cupp v. Naughten, supra,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368, dealt with a charge that "Every witness is presumed to speak the truth", a presumption which could be "overcome" in certain ways, some of which demanded the production of evidence by the defense. *Id.* at 142, 94 S.Ct. at 398. The Supreme Court there reversed the Ninth Circuit's grant of habeas corpus to a state prisoner on the ground that the effect of the instruction was to place the burden on the defendant to prove his innocence, 476 F.2d 845 (9th Cir. 1972), *reh'g en banc denied by an equally divided court,* 476 F.2d 845 (9th Cir. 1973). The Court began its analysis by stating, 414 U.S. at 146–47, 94 S.Ct. at 400:

In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd*

*v. United States,* 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926).[5]

After referring to the Ninth Circuit's conclusion that the effect of the instruction was to place the burden on defendant to prove his innocence, the Court stated that "the trial court gave, not once but twice, explicit instructions affirming the presumption of innocence and declaring the obligation of the State to prove guilt beyond a reasonable doubt." *Id.,* 414 U.S. at 147, 94 S.Ct. at 400. Noting the argument of the Court of Appeals that although such instructions had been given, "there was no instruction so specifically directed ... to have effected a cure," 476 F.2d at 847, the Court thought, 414 U.S. at 147, 94 S.Ct. at 400, "this analysis puts the cart before the horse; the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

In sharp contrast to the sparse boilerplate instructions on the presumption of innocence and the burden of proof beyond a reasonable doubt given in *Sandstrom* (U.S. App. 34–35), which the Supreme Court held insufficient to cure the presumption charge there given, *supra,* 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7, the instructions given on those subjects in this case, which we have already summarized, were pointed, emphatic, repeated and detailed. The judge thoroughly explained the distinction between the intent required to sustain a charge of murder in the second degree, as distinguished from that required to support a charge of manslaughter. He stressed the State's obligation to prove beyond a reasonable doubt a specific intent to kill, a "conscious objective: to cause death." He listed facts and circumstances which the jury might "inferentially" consider in determining Nelson's intent, and told the jury that it "should" consider these circumstances. Even the offending passage ended, as we have noted, with a direction to the jury to

ask itself "this question: Did William John Nelson have the specific intent to kill Robert Lee Douglas." After instructing further with respect to intoxication and the irrelevance of Nelson's flight, the judge again emphasized that the jury must be convinced beyond a reasonable doubt that Nelson had the intent to kill, and that such a conclusion could be reached only "after considering all the evidence." In this case, as distinguished from *Sandstrom, supra,* 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7, there was simply no possibility that after all this hammering by the judge, "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." We thus cannot conclude that the two offending sentences, taking about thirty seconds to deliver, "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. at 400. See *Belton v. United States,* 382 F.2d 150, 154–55 (D.C. Cir.1967).

Courts of appeals confronted by the many appeals and habeas corpus cases that have emanated from pre-*Sandstrom* trials have not dealt with the problem as the district court did here. Rather they made careful inquiry, as required by *Cupp v. Naughten, supra,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368, to determine whether, taking the entire charge into consideration, there was any significant possibility that harm was done. See *United States v. Spiegel,* 604 F.2d 961, 968–70 (5 Cir. 1979); *McInerney v. Berman,* 621 F.2d 20, 22–24 (1 Cir.), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980); *United States v. Frady,* 636 F.2d 506, 509 (D.C.Cir.1980); *Carter v. Jago,* 637 F.2d 449, 455 n.5 (6 Cir. 1980); *Jacks v. Duckworth,* 651 F.2d 480, 485–87 (7 Cir. 1981). The New York Court of Appeals also has followed the same sensible course, distinguishing *Sandstrom* and its own similar decision in *People v. Getch,* 50 N.Y.2d

---

**5.** Justice Van Devanter's remark in *Boyd* that an instruction erroneous if it stood alone, must "be taken in connection with what had preceded it and also with what followed", is exceedingly pertinent here.

456, 429 N.Y.S.2d 579, 407 N.E.2d 425 (1980), in a case where although the judge had charged the presumption, he had made it "clear throughout that the jury had a choice and that it was for them to decide from all the circumstances in the case whether the People had met their burden of proving that the defendant actually intended the result." *People v. Green*, 50 N.Y.2d 891, 893, 430 N.Y.S.2d 267, 268, 408 N.E.2d 675, 676 (1980). We hold that to be the situation here.[6]

The judgment is reversed with instructions to deny the petition.

OAKES, Circuit Judge (dissenting):

I respectfully dissent. In ruling on Nelson's petition for habeas corpus the district court found that the state judge's instruction on intent "rises to a level of constitutional violation" mandating a grant of the petition. I agree.

I would state the underlying facts a little less colorfully than Judge Friendly's opinion does, as follows. Robert Douglas died of gunshot wounds suffered on July 31, 1975. According to the State's three principal witnesses, including the common-law wife of the deceased and two other persons who had spent the evening of the shooting on West 95th Street in Manhattan, a number of people were talking, drinking, and listening to music on West 95th Street during the hot evening hours. At one point late in the evening Nelson, who had been drinking and was described as "excited" and "high," became involved in a loud quarrel with another man. Douglas attempted to intervene in the argument but Nelson only became more angry and abusive and suddenly drew a revolver. Douglas knocked aside Nelson's arm, deflecting the first shot, which struck the ground. Douglas then took a step backward. Nelson fired two more shots, both of which hit Douglas in the chest. Nelson fled after the shooting and was arrested early the next morning. At trial there was no defense other than that Nelson had lacked

the specific intent to kill required to commit second degree murder. The trial judge submitted the case to the jury on both a second degree murder charge and a first degree manslaughter charge, the requisite intent for manslaughter being "to cause serious physical injury," N.Y.Penal Law § 125.20.

Before the court's charge to the jury Nelson submitted thirty-one requests to charge, including several relating to the issue of intent. His Request No. 17 underscored the defense contention that the shooting by itself was insufficient to find the intent to kill necessary to convict him of murder. His Request No. 20 stated:

Every sane person is presumed to intend the natural and probable consequences of his acts. However, a specific intent to kill is required as an element of the crime of Murder in the Second Degree and no inference of such intent may be drawn from the mere proof of the act of shooting the deceased.

Moreover, Nelson's Request No. 30 distinguished intent to inflict serious personal injury without causing death from the specific intent to kill that is an essential element of the crime of murder in the second degree.

The trial judge denied Nelson's requests to charge relating to intent except to the extent they would be "charged in the Court's own language." The court principally charged as follows:

On this issue [of intent] you may wish to examine, for example, what motive there was for the shooting. What threats, if any, the defendant made to the victim. The number of shots fired. The location of the wounds on the victim's body. The distance from which the gun was fired. And the testimony of alleged witnesses to the shooting; the physical condition of the defendant. Also, there is a princip[le] of law upon which you may wish to rely in determining a person's intent, and that is, a person is presumed to intend the natural and probable consequences of his

---

6. In light of our holding, we have no occasion to consider whether *Sandstrom* should be applied so as to permit collateral attack on con-

victions at trials preceding it. See *United States v. Spiegel, supra*, 604 F.2d at 969.

acts. A person cannot, for example, throw someone off the roof of an apartment building and then say he was merely conducting an experiment in aerial dynamics. You ask yourself this question: Did William John Nelson have the specific intent to kill Robert Lee Douglas. While trial counsel was given no opportunity such as counsel are permitted in federal court to review or comment upon the trial judge's instructions before they were delivered to the jury, he took exception "very strongly" following delivery of the charge to the "extremely prejudicial" aerial-dynamics example in the intent instruction. Ending his colloquy on this instruction, he stated, "I submit that constitutes a direction to the jury to find the defendant guilty of murder in the second degree. I except to that," In addition he excepted once again to the court's refusal to give certain of his requested charges, including Request No. 20. The jury returned a verdict of guilty of murder in the second degree.

While the majority opinion does not rest on the State's first argument—that the petitioner is barred by a procedural default from challenging the court's charge in a habeas corpus proceeding under, *e.g., Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Gruttola v. Hammock*, 639 F.2d 922 (2d Cir. 1981)—I must deal with it. The State suggests that Nelson not only failed to object to the passage in the state trial court's instructions that the district court now has found improper, but actually requested that the trial court include a virtually identical passage in the charge, *viz.*, the first sentence of Request No. 20, "Every sane person is presumed to intend the natural and probable consequences of his acts."

But Request No. 20 differed markedly in meaning from the judge's actual instruction. Not only did Nelson not waive his

objection to that instruction, but the denial of his Request No. 20 preserved his claim against the judge's ultimate, different instruction under N.Y.Crim.Proc.Law § 470.-05(2),[1] regardless of whether he took exception. Nelson also argues nonetheless that he did take exception, satisfying the contemporaneous-objection rule, because trial counsel fairly presented to the trial judge his objection to the court's presumption language. In any case, he argues, he presented his objection to the instruction on appeal, and the State opposed his claim on the merits without raising a procedural bar to its consideration.

The State's second argument, accepted by the majority, is that the instructions on intent fully comported with the requirements of due process when evaluated not in isolation but with reference to whether the jury would understand the correct rule from the charge as a whole. *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). As did the district court, I would answer that those instructions denied Nelson due process by allowing the jury to rely on a presumption of his intent instead of requiring proof beyond a reasonable doubt, in my view this not only violated the rule of *Sandstrom v. Montana* but also infected the whole trial. While the case is a close one, I am persuaded that the judgment of the district court should be upheld.

I would first reject the State's argument that the defense invited the charge as given because the first sentence of Request No. 20 referred to the presumption that one intends the natural and probable consequences of one's acts. Request No. 20 read as a whole attempts to show that any such presumption is *not* applicable in this case because "no inference of [specific] intent [to

---

1. That statute, after setting forth New York's contemporaneous objection rule, states that

    a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

kill] may be drawn from the mere proof of the act of shooting the deceased."[2] The requested instruction plainly was meant to take Nelson's case out of the presumption, not to put his case within it.

I would find that Nelson's petition is not barred by procedural default, because Nelson's trial counsel excepted to the "specific intent" charge. It is true that the exception[3] refers initially to the aerial-dynamics example, which itself was in my view not innocuous but inflammatory. The State argues that the judge might have understood defense counsel to object only to the example and to acquiesce in the presumption language in the instruction's preceding sentence. I disagree, however, as I believe that counsel's objection that the court's charge "direct[ed] . . . the jury to find the defendant guilty of murder in the second degree" can fairly be read as going to the entire charge on intent: it was the combination of the example, the sentence about presumed intent preceding it, and the omission of requested language favorable to the defense, that amounted to a "direction" to the jury. When viewed together with petitioner's renewal of Requests Nos. 20 and 30—which sought a charge on intent that departed from the trial court's presumption language—petitioner's objection was properly found by the district court to go to the charge taken as a whole.

**2.** It has been suggested that the second sentence in Request No. 20, stating that no inference of specific intent to kill can be drawn "from the mere proof of the act of shooting the deceased," was erroneous in light of the evidence that Nelson fired three shots at point-blank range. But the State conceded on page 51 of its brief before the Appellate division that the language proposed in Request No. 20 was "a correct statement of law," even though it contended that an instruction on intent need not contain that language.

**3.** MR. JACOBSON: I except very strongly to the Court giving an example after the Court said that a person is presumed to intend the natural consequence of his acts.

Immediately after that, the Court gave an example which I consider extremely prejudicial to the defendant.

THE COURT: If a person throws someone off the roof?

MR. JACOBSON: Yes.

The procedural-default cases including *Wainwright v. Sykes; Gruttola v. Hammock; People v. Thomas*, 50 N.Y.2d 467, 407 N.E.2d 430, 429 N.Y.S.2d 584 (1980), are inapposite because in those cases no objection was made at trial. And the State has not shown that petitioner's objection at trial was insufficient under New York law. *People v. Ross*, 21 N.Y.2d 258, 234 N.E.2d 427, 287 N.Y.S.2d 376 (1967), has no bearing here, as it held that a general objection to testimony regarding "conversations" could not preserve a specific objection to the Government's failure to provide prior notice to the defense of any admissions to be offered, because this specific objection, had it been stated, could have been obviated by a hearing on the voluntariness of those admissions. Here, by contrast, the legal substance of the objection following the charge was quite specific. Moreover, the denial of Nelson's requested charges was itself enough under New York law, even without an actual exception, to "have protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law." N.Y. Crim.Proc.Law § 470.05(2).

Even if I were wrong in the foregoing, *Washington v. Harris*, 650 F.2d 447, 451–52 (2d Cir. 1981), answers the State's contemporaneous-objection argument. In *Wash-*

THE COURT: I intended to use, I might say, the one I usually use in my charge, but I used it, of course, because the district attorney used it in his summation. I didn't think it would be fair to highlight it.

The one I intended to use was the person cannot hit someone over the head with a hammer and be heard to say, I was merely swatting at a fly.

MR. JACOBSON: I submit that constitutes a direction to the jury to find the defendant guilty of murder in the second degree. I except to that.

THE COURT: That is it?

MR. JACOBSON: Yes.

THE COURT: Any requests?

MR. JACOBSON: I renew my requests with these following numbers paragraphed in my request to charge. I think I should reiterate it now, briefly.

Paragraph 20, 21, 28, 29, 30 and 31.

THE COURT: Your request is denied.

*ington v. Harris* the defendant had failed to object at trial to a charge containing the phrase "you may infer that a person intends that which is the natural and necessary and probable consequences of the acts performed by him," but he did raise the issue in the Appellate Division. The State's brief in the Appellate Division addressed the merits of Washington's objection, but did not raise a procedural bar. The Appellate Division affirmed without opinion. Following *Callahan v. LeFevre,* 605 F.2d 70, 73–74 n.6 (2d Cir. 1979), a case with a similar procedural history, the court held that Washington could challenge the instruction in a federal habeas proceeding, notwithstanding the State's claim there, for the first time, that such a challenge was barred under *Wainwright v. Sykes.* The Appellate Division's affirmance without opinion, the *Washington* court found, indicated that rather than applying a contemporaneous-objection requirement to bar the claim, it had passed on the merits. 650 F.2d at 452.

I believe a fair reading of the State's brief before the Appellate Division leads to the same result in this case. Here the State's brief from pages 50 to 53 addressed the merits of the claim. The only conceivable claim of procedural bar made by the State to the Appellate Division, mentioned by the majority, was at page 54 of its brief, in which the State argued as set out in the margin.[4] I do not believe that this language alone permits us to infer that the Appellate Division affirmed on the basis of a procedural default. Nor do I draw such an inference from the fact that the Appellate Division's affirmance was without opinion, for in both *Washington v. Harris* and *Callahan v. LeFevre* the Appellate Division affirmed without opinion although confronted with the same serious constitutional claim.

Reaching the merits, then, while the question is a close one, I agree with the

district judge that the instruction given by Justice Roberts was not merely "permissive" as the State claims. The instruction, "there is a princip[le] of law ..., and that is, a person is presumed to intend the natural and probable consequences of his acts," charged the jury on the issue of intent in virtually the same language as in *Sandstrom v. Montana.* In *Sandstrom* the jury was charged that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513, 99 S.Ct. at 2453. The Supreme Court found that a reasonable jury could well have interpreted that instruction as either a conclusive presumption on the issue of intent or as a mandatory presumption that unconstitutionally shifted to the defendant the burden of proving that he lacked the intent to kill required to find deliberate homicide. *Id.* at 517–19, 99 S.Ct. at 2455–2457. This violated the requirement of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), that the State carry the burden of proving beyond a reasonable doubt all of the essential elements of the crime charged. *Sandstrom,* 442 U.S. at 521, 99 S.Ct. at 2457–58.

The jury instructions in this case, as in *Sandstrom,* differed from instructions describing what other courts have found to be permissive inferences, which, unlike mandatory presumptions, are generally acceptable in jury instructions. *See Ulster County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). The instructions at issue in, *e.g., United States v. Tecumseh,* 630 F.2d 749, 752–54 (10th Cir.) ("you may find, from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice which is an essential element of the offense"), *cert. denied,* 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980), and *United States v. Davis,* 608 F.2d 698, 699 (6th Cir. 1979) ("It is ordinarily reasonable to infer

---

4. Moreover, the offending charge in *Sandstrom* had been given at the prosecution's request, and the defendant took strong exception. 442 U.S. at 512–514, 99 S.Ct. at 2453–2454, 61 L.Ed.2d at 44. Here, defendant in fact requested that the court charge, "Every sane person is

presumed to intend the natural and probable consequences of his acts." Having requested that language, which might well have been objectionable under *Sandstrom,* defendant cannot be heard to complain that the charge actually given here constitutes error under *Sandstrom.*

that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted"), *cert. denied* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980), cases on which the State relies, neither stated that the law presumes one fact from another, nor discouraged the jury's consideration of other evidence.

By contrast, if the jury applied the presumption charged by the court in this case, it could well have understood the undisputed fact that Nelson shot and killed Douglas to have conclusively established the only disputed fact—that Nelson had the intent to kill. *See Sandstrom*, 442 U.S. at 517, 99 S.Ct. at 2455. The jury then would have been excused from considering all evidence in this case suggesting that Nelson lacked that intent and that he intended only to cause serious bodily harm to Douglas, including evidence that the killing followed a series of heated arguments and that Nelson had been drinking and possibly was "high." Alternatively, in light of the earlier portion of the intent charge, which suggested other circumstances from which to determine Nelson's intent, and in light of the trial judge's various admonitions to consider all the evidence before reaching a verdict, the jury could well have interpreted the charge below to mandate a presumption of intent rebuttable by other evidence. *See id.* at 517–18, 99 S.Ct. at 2455–2456. Either interpretation would have deprived defendant of due process, the first by relieving the State of its obligation to prove the essential element of intent beyond a reasonable doubt, *see id.* at 523, 99 S.Ct. at 2458–59, the second by shifting to the defendant the burden of proof on the issue of intent, *see id.* at 524, 99 S.Ct. at 2459. I therefore would find the charge unconstitutional under *Sandstrom*.

The majority asserts, however, that the force of Justice Roberts's improper charge was adequately mitigated, and that the conclusive or rebuttable presumption it described was transformed into a permissive infer-ence, because the judge introduced the inappropriate legal principle as one of which the jury "may wish to rely" rather than one on which it must rely. In my view, a reasonable jury would have gained no such understanding from this polite prefatory remark. It no more invited the jury to make a considered choice whether to employ the burden-shifting presumption than the familiar preface, "you may be interested to learn," invites a jury to ignore what follows, or the introduction, "may it please the court," suggests to us that appellate counsel is unconcerned whether we favor his argument.

Examining the trial judge's language in context, and considering how it would have sounded to a jury, I believe rather that a reasonable juror may well have felt required to employ the conclusive or rebuttable presumption. The prosecutor first suggested the presumption to the jury by using in his summation an example similar to the one later given by the trial judge.[5] The judge then restated the presumption, thereby adding his authority to that of the prosecutor. The judge further reinforced the supposed validity and appropriateness of the presumption by denominating it a "princip[le] of law," with the attendant weight and authority to be accorded a fundamental legal truth. Finally, the importance of the presumption was augmented by the aerial-dynamics example, which made the issue concrete for the jury and ridiculed the possibility of any defense, and therefore might well have impressed the jury as deeply as any of the preceding language about intent. Accordingly, I would reject the State's suggestion that the judge's prefatory phrase sufficiently mitigated the improper instruction that followed.

Even if the trial judge had made clear by its "you may wish to rely" language that the jury was entitled to choose not to employ the conclusive or rebuttable presump-

---

5. The trial judge had intended to use the illustration, "the person cannot hit someone over the head with a hammer and be heard to say, I was merely swatting at a fly," but he "didn't think it would be fair to highlight it" after the prosecutor had already used it in summation; as a result, he substituted the aerial dynamics example.

tion and instead to determine Nelson's level of intent based on all the facts of the case, I believe the instruction would still have been impermissible. A jury may not, consistently with *In re Winship*, be invited to shift to the defendant the burden of proof on an essential element of the crime charged.

I do not find it significant that *Sandstrom* was decided after the trial in this case. *Sandstrom* followed a considerable line of cases, including *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that held unconstitutional instructions evading the requirement set forth in *Winship* that the State prove every element of a criminal offense beyond a reasonable doubt. In *Morissette*, for example, the Court, after quoting Judge Andrews in *People v. Flack*, 125 N.Y. 324, 334, 26 N.E. 267, 270 (1891), stated:

> [T]he trial court may not withdraw or prejudge the issue [of intent] by instruction that the law raises a presumption of intent from an act. It often is tempting to cast in terms of a "presumption" a conclusion which a court thinks probable from given facts. . . .
>
> We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. . . .

342 U.S. at 274–75, 72 S.Ct. at 255–256 (footnote omitted). Thus *Sandstrom* was not stating new law. Indeed, "[f]or more than a century, the charge condemned in *Sandstrom* has been held by [the New York Court of Appeals] to be erroneous as a matter of State law. . . ." *People v. Thomas*, 50 N.Y.2d at 473, 407 N.E.2d at 432, 429 N.Y.S.2d at 587, *cited in Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir. 1981).

I also do not find a different outcome to be suggested by *Ulster County Court v. Allen*, which was decided shortly before *Sandstrom* and was certainly not overruled by it. *See Sandstrom*, 442 U.S. at 514, 99 S.Ct. at 2454. In *Ulster County Court*, which involved a jury instruction on possession rather than on intent as in this case and *Sandstrom*, the Court distinguished the "entirely permissive inference or presumption, which allows—but does not require— the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant," 442 U.S. at 157, 99 S.Ct. at 2224, from the "mandatory presumption" which "may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden [because] it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the facts." *Id.*

In *Ulster County Court* the trial judge explicitly cautioned the jury that "[t]he presumption or presumptions is [*sic*] effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced." *See* 442 U.S. at 161 n.20, 99 S.Ct. at 2227 n.20. In our case, by contrast, the trial judge followed the "princip[le] of law" or presumption language with the rather extraordinary example of throwing somebody off a roof. The cautionary instructions the trial judge gave did not have the sweep of the cautionary instructions in *Ulster County Court*. Justice Roberts did instruct that "you may consider what evidence if any that would show that

this defendant was so under the influence of an intoxicant that he was unable to form a specific mental intent to kill," but permission to consider such evidence could not necessarily overcome the presumption charged a moment before. One does not have to be nursed on Wigmore to be confused by a judge speaking of a principle of law that one presumes the consequences of his acts. Although the trial judge noted at the end of his instruction on intent that the jury could convict only "[i]f after considering all of the evidence you find that the People have established the defendant's intent ... beyond a reasonable doubt," *Sandstrom* suggests that such a generalized instruction is insufficient to overcome the prejudicial effect of the challenged language in the charge. 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7. Here, like the Court in *Sandstrom*, I would "not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that [Nelson's] jurors actually did proceed upon one or the other of these latter interpretations." *Id.* at 519, 99 S.Ct. at 2456–57.

Having concluded that there was no procedural bar to this constitutional challenge to the presumption language of the trial judge's intent charge, and that the charge violated due process, I would not need to consider whether giving the aerial-dynamics example, to which trial counsel unquestionably objected, was itself a conclusive or burden-shifting presumption violating *In re Winship* and *Sandstrom*. But I have serious doubts about whether the illustration was constitutionally permissible. I also have doubts, which need not be resolved here, about whether even a permissive inference would have been appropriately charged here. *Ulster County Court*, 442 U.S. at 165, 99 S.Ct. at 2228, requires a " 'rational connection' " between the basic facts proved by the prosecution and the

ultimate fact presumed, so that the latter is " 'more likely than not to flow from' " the former. Intent was the crucial, indeed the only, issue in this case and hence I believe we must be wary of allowing the judge to emphasize to the jury, even as a permissive inference, that "a person ... intend[s] the natural and probable consequences of his acts." An intent to cause bodily harm? Yes. An intent to kill? Not necessarily. *See People v. Flack.*

Finally, an erroneous jury charge is susceptible to the harmless-error rule, *see Sandstrom*, 442 U.S. at 526–27, 99 S.Ct. at 2460–61; *Washington v. Harris*, 650 F.2d at 453–54. The State here, however, has failed to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See United States v. Robinson*, 545 F.2d 301, 306 (2d Cir. 1976).

For reasons stated, I would affirm.