**Richard LANGONE, Petitioner-Appellant,**

v.

**Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent-Appellee.**

**Docket No. 81–2327.**

United States Court of Appeals, Second Circuit.

Argued March 16, 1982.

Decided March 19, 1982.

On Petition for Rehearing En Banc Decided June 15, 1982.

held. *See Jasinski v. Showboat Operating Co.*, 644 F.2d 1277 (9th Cir. 1981); *Dredge Corp. v. Penny*, 338 F.2d 456 (9th Cir. 1964).

OAKES, Circuit Judge (dissenting from denial of rehearing en banc):

I dissent from the court's refusal to rehear en banc the summary affirmance by written order of a denial of habeas relief. This case squarely presents not one but two issues worthy of *en banc* consideration under any test I know: (1) the standard for reviewing claims of ineffective assistance of counsel and (2) the standard for reviewing alleged violations of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

I. The Sixth Amendment Issue

The panel properly found that Langone's counsel did not make a "farce and mockery" of Langone's homicide trial. That extreme standard is not met even when counsel falls asleep during trial. *United States v. Katz*, 425 F.2d 928, 931 (2d Cir. 1970). But the defense attorney did, in my view, render assistance which fell measurably below the stricter Sixth Amendment standard of reasonable competence now embraced by every federal court of appeals but our own[1] and

1. The Second Circuit requires performance that merely avoids making a "farce and mockery of justice." *United States v. Wight*, 176 F.2d 376 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). The other circuits hold that the Constitution is satisfied only if counsel performs with reasonable professional competence. *See United States v. Bosch*, 584 F.2d 1113 (1st Cir. 1978); *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977); *Nelson v. Estelle*, 642 F.2d 903 (5th Cir. 1981); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974); *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975); *Hawkman v. Parratt*, 661 F.2d 1161, 1165 (8th Cir. 1981); *Cooper v. Fitzharris*, 586 F.2d 1325, 1328–30 (9th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980); *United States v. DeCoster*, 624 F.2d 196, 202–07 (D.C.

by at least half of the state courts. Although the Supreme Court has not faced the issue directly, the language of its latest Sixth Amendment cases indicates that the requirement that counsel provide effective assistance—first propounded as a matter of due process in *Powell v. Alabama*, 287 U.S. 45, 68–71, 53 S.Ct. 55, 63–65, 77 L.Ed. 158 (1932)—is not shadow but substance. In *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980), for instance, the Court said "[a] guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice'" (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970)). *See also Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

The only reasonably unclear issue in Langone's state court criminal trial was whether Langone had the "intent to kill" necessary to convict him of second-degree murder rather than manslaughter. Counsel failed to present any of the available evidence to negate intent, including evidence—established at the post-conviction proceedings—of Langone's drug intoxication. The half-hearted defense pursued was that the shots fired by Langone ricocheted from the ground into the victim. The theory was flatly contradicted not only by all of the available evidence and testimony—with which counsel had never familiarized himself before trial—but also by Langone's own trial testimony. The reasons for the deficient performance were confirmed by the lawyer's testimony at the postconviction proceeding: his law firm believed it unnecessary to prepare a defense, having become convinced that a bargained plea to the lesser charge of manslaughter would be obtained;[2] moreover, Joseph Galiber, the firm's attorney with whom Langone had principally spoken, was not available when the negotiations fell through and the case was forced to trial. Thus, trial counsel had done little if any pretrial investigation or prepa-

---

Cir.1979) (en banc). *See also* Bazelon, *The Realities of* Gideon *and* Argersinger, 64 Geo. L.J. 811, 819–20 (1976); Note, *A Functional Analysis of the Effective Assistance of Counsel*, 80 Colum.L.Rev. 1053 (1980).

**2.** John Iannuzzi stated as follows in an affidavit submitted at the post-conviction proceedings:
In 1974 and 1975 I was ... professionally associated with State Senator Joseph L. Galiber. Carmen Wilcox, mother of Richard Langone, engaged our firm to represent Richard upon his indictment in December, 1974, for a charge of murder in the second degree. After investigating the matter, it was our belief that the said charge could be disposed of without the necessity of a trial. This belief was founded upon a series of mitigating factors: the defendant had no prior criminal record, the killing was not intentional, the defendant was only 18 years old.

Senator Galiber thereafter commenced discussions of disposition with the District Attorney's office.

Over several months, the case appeared on the calendar several times, always adjourned because of continuing discussions of disposition between the District Attorney's and our offices. Although the case had been tentatively set for trial on September 8, 1975, it was still believed that a plea could be arranged.

These beliefs were buttressed, in addition to facts previously mentioned hereinabove, by the unofficial position of the sitting and ultimately sentencing judge that justice would well be served by an offer and acceptance of a Manslaughter, 1st degree disposition. The defendant was willing. Since it was common to reduce a charge down one degree where there was a disposition without trial, the ultimate success of disposition seemed imminent.

On September 8, 1975, I went to court to seek an adjournment so that Senator Galiber, who had been conducting the plea negotiations, could make a final attempt at securing a plea upon his return from a Special Session of the State Legislature. As an alternative, upon a failure of negotiated disposition, I desired an adjournment so that the case could be prepared for trial.

I did not expect to try this case on September 8, 1975, and, thus, the case was not fully prepared for trial at that time, as the minutes of the proceedings on that day amply reflect.

Specifically, although a defense of drug intoxication had been discussed, it had not been completed on September 8, 1975, due, in part to the continuing belief that the case would be disposed of by a plea of guilty to a lesser charge.

. . . .

The case was ordered to trial notwithstanding all of the above.

. . . .

I tried the case effectively as I could under the circumstances.

ration by the time the case came to trial and the requests for an adjournment by defense counsel and the defendant were denied.

Nor can counsel's performance be deemed merely a choice of trial strategy. On his own theory of the case, counsel interviewed none of the prosecution witnesses, retained no forensic or ballistics expert, and conducted no scientific tests. On the accused's theory of the case, counsel interviewed not one of the people named by Langone who saw him ingest numerous drugs, including methadone and barbiturates. Moreover, there was no need to choose between the two defenses here, because Langone's drug intoxication could have been presented to the jury along with and entirely consistently with counsel's theory that Langone had not fired the shots directly.

Counsel's failure to *prepare* and *present* a defense based upon Langone's absence of intent to kill was a denial of effective assistance of counsel under the standards prevailing in all other circuits. Failure to prepare, followed by presentation of a "bizarre" or "implausible" defense, is surely incompetent conduct on the part of counsel. *Beasley v. United States*, 491 F.2d 687, 690–91 (6th Cir. 1974). Preparation is often more important than courtroom presentation. *Moore v. United States*, 432 F.2d 730, 735, 739 (3d Cir. 1970). *See also Nelson v. Smith*, 504 F.Supp. 1139 (E.D.N.Y.), *aff'd without opinion*, 659 F.2d 1061 (2d Cir. 1981). And where an accused admits committing the charged act (here shooting), failure to investigate a lack-of-competency defense is a failure to prepare of the highest order. *See* Note, *A Functional Analysis of the Effective Assistance of Counsel*, 80 Colum.L.Rev. 1053, 1082 (1980). Preparation is the sine qua non of effective assistance. *Cole v. Peyton*, 389 F.2d 224, 226 (4th Cir.), *cert. denied*, 393 U.S. 849, 89 S.Ct. 80,

21 L.Ed.2d 120 (1968); *see* ABA Standards for Criminal Justice, The Defense Function § 4.1 (Approved Draft 1971).[3] As the comments to the Standards emphasize, "[t]he relationship of effective investigation by the lawyer to competent representation at trial is patent . . . ." *Id.* at 227.

For reasons which have previously been stated by the undersigned, *see, e.g., Rickenbacker v. Warden*, 550 F.2d 62, 67–68 (2d Cir. 1976) (Oakes, J., dissenting), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977), as well as by several other members of this court, *see, e.g., Indiviglio v. United States*, 612 F.2d 624, 632 (2d Cir. 1979) (Mansfield, J., concurring), *cert. denied*, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980), and which each day's Supreme Court decisions make all the more compelling, *see, e.g., Engle v. Isaac,* —— U.S. ——, ——, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial *and a competent attorney*") (emphasis added), it is proper that the Second Circuit at long last join the rest of the federal judiciary, as well as the leading state courts of last resort, in abandoning the contentless, outmoded "farce and mockery" rule. I believe that this is a clear-cut case for doing so.

⸰ II. The *Sandstrom* Issue

The state court's intent charge in its entirety was as follows:

Now with regard to the word "intent" as used in the statute defining murder in the second degree, I charge you as follows:

Whether intent to kill existed in this case is not a question of law to be determined by the Court. Whether such intent existed must be determined by you, the jury. Such determination must be made by reference to all the facts and

---

**3.** Section 4.1 reads:

4.1 Duty to investigate.

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty.

circumstances in this case, all the facts and circumstances in this case.

The reckless intent to kill may be inferred from the totality of the conduct of the accused. In this regard, I charge you that the defendant is presumed to have intended the natural and necessary consequences of his acts. Is that clear?

The panel undertook the task of "examin[ing] the jury instruction in its entirety to determine whether a reasonable jury would understand it to shift any part of the burden of proving guilt beyond a reasonable doubt away from the state" (citing *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), and *Nelson v. Scully*, 672 F.2d 266 (2d Cir. 1982)), and concluded that the instruction as a whole was not burden-shifting. The application of *Cupp v. Naughten* in this fashion simply reads *Sandstrom* out of the United States Reports. The presumption language here was indistinguishable from that in *Sandstrom*, and unlike the language in *Nelson v. Scully* ("there is a princip[le] of law upon which you may wish to rely," 672 F.2d at 268), could not reasonably be understood as other than burden-shifting. The instruction indicated that the presumption was applicable to this particular defendant—the judge charged that "*the defendant is presumed*"—and therefore the jury did not even have the option of declining to apply the burden-shifting presumption. Moreover, the presumption was emphasized immediately thereafter by the question "Is that clear?" and there was little (other than, to stretch it, the earlier "facts and circumstances" language) that suggested to the contrary. Finally, the presumption of intent went to the heart of this case—the question whether Langone had intent to kill or whether, as the judge charged *sua sponte*, he was guilty at most of manslaughter.

The panel's conclusion was flatly at odds both with the result in *Sandstrom* and with the Court's reasoning in that case. *Sandstrom* teaches us that a mandatory presumption, whether conclusive or burden-shifting, can be cured only by sufficient "rhetorically inconsistent" language to inform the jury of the correct rule of law. 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456 n.7. General charges on the State's burden of proof and the presumption of innocence are not rhetorically inconsistent with a mandatory presumption, *id.* The absence of any substantial rhetorically inconsistent language in cases involving burden-shifting intent charges compels a finding that the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. at 146–47, 94 S.Ct. at 400. To apply *Cupp* in any other way in this type of case, as the panel did here in reliance on language in *Nelson v. Scully*, is impermissible under *Sandstrom*. *See, e.g., Dietz v. Solem*, 640 F.2d 126, 130–31 (8th Cir. 1981).

The issue should be resolved by this circuit en banc. We have been reviewing *Sandstrom* claims on the order of one per sitting, and the opinions of the district judges evidence considerable confusion about how to apply both *Sandstrom* and the majority opinion in *Nelson v. Scully*, which the district judges perceive to be in conflict. But even if *Nelson v. Scully* can be reconciled with *Sandstrom*, this case cannot.